1   JORDAN J. YUDIEN, ESQ., SBN 121182
WILLIAM J. TRINKLE, ESQ. SBN 102280
2   YUDIEN & ASSOCIATES
2033 North Main Street, Suite 430
3   Walnut Creek, California 94596
Tel: (925) 472-0600; Fax: (925) 472-0325
4   jodyjay@pacbell.net / TrinkleLaw@aol.com

5   Attorneys for Defendant Fonjax, Inc.

6

7

8                UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CO-INVESTOR, AG,       )  Case No. C08-01812 SBA
                         )
12            Plaintiff, )  **DEFENDANT FONJAX, INC.'S NOTICE OF**
                         )  **MOTION TO DISMISS THE COMPLAINT**
13   vs.                  )  **PURSUANT TO F.R.C.P. RULE 12(b)(6);**
                         )  **MEMORANDUM OF POINTS AND**
14   FONJAX, INC.,        )  **AUTHORITIES IN SUPPORT THEREOF**
                         )
15           Defendant. )  Date:       July 8, 2008
                         )  Time:      1:00 p.m.
16                      Courtroom:  3

17   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

18         PLEASE TAKE NOTICE THAT on July 8, 2008, at 1:00 p.m in Courtroom 3 of the above-

19   referenced Court, or as soon as the matter my be heard, Defendant Fonjax, Inc. will move for an

20   order dismissing the complaint and each claim for relief stated therein pursuant to F.R.C.P. Rule

21   12(b)(6) on the ground that the complaint and the individual claims for relief fail to state a claim

22   upon which relief can be granted.  This motion is supported by this notice of motion, the supporting

23   memorandum of points and authorities, any reply to any opposition which may be filed, any oral

24   argument presented on this motion, the Court's records and files in this matter, and such other matter

25   as the Court deems appropriate to consider in connection with this motion.

26

27

28

1

TABLE OF CONTENTS

2   TABLE OF CONTENTS........................................................ i

3   TABLE OF AUTHORITIES.................................................... iii

4   MEMORANDUM OF POINTS AND AUTHORITIES................................ 1

5   I.      FACTS................................................................ 1

6   II.     ARGUMENT............................................................ 3

7           A.      STANDARDS APPLICABLE TO THIS MOTION TO DISMISS............ 3

8           B.      THE FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT FAILS TO
                    STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED............ 4

9
            C.      THE SECOND CLAIM FOR RELIEF FOR BREACH OF THE IMPLIED
10                  COVENANT OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A
                    CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................... 8

11
                    1.      THE COMPLAINT DOES NOT PLEAD THE REQUISITE ELEMENTS OF
12                          A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND
                            FAIR DEALING............................................. 8

13
                    2.      EVEN IF THE COMPLAINT ALLEGATIONS VIEWED IN ISOLATION
14                          ARE SUFFICIENT TO STATE A CLAIM FOR BREACH OF THE
                            COVENANT OF GOOD FAITH AND FAIR DEALING, THE ACCURACY
15                          OF THE ALLEGATIONS IS BELIED BY THE CONTENT OF THE
                            ATTACHED DOCUMENTS. ..................................... 9

16
            D.      THE THIRD CLAIM FOR RELIEF FOR FRAUD FAILS TO STATE A CLAIM
17                  UPON WHICH RELIEF CAN BE GRANTED......................... 10

18          E.      THE FOURTH CLAIM FOR RELIEF FOR A DECLARATORY JUDGMENT
                    FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.. 13
19
            F.      THE FIFTH CLAIM FOR RELIEF FOR PROMISSORY ESTOPPEL FAILS TO
20                  STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED........... 13

21          G.      THE SIXTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT FAILS TO
                    STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.. ......... 14
22
    III.    CONCLUSION. ....................................................... 14

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3  *Beacon Const. Co. v. Matco Elec. Co., Inc.*, 521 F2d 392, 397 (2nd Cir. 1975).. . . . . . . . . . . . 13

4  *Conley v. Gibson*, 355 US 41, 45-46, 78 S.Ct. 99, 102 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5  *De La Cruz v. Tormey*, 582 F2d 45, 48 (9th Cir. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6  *Durning v. First Boston Corp.* 815 F2d 1265, 1267 (9th Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . 4

7  *Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.* 2007 WL 1101456, p. 5 (E.D. Cal. 2007).. . . . . . . . . 13

8  *Hougue v. City of Holtville*, 2008 WL 1925249 (S.D. Cal. 2008).. . . . . . . . . . . . . . . . . . . . . . . 8, 9

9  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) . . . . . . 4

10  *SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp. 718, 726-727 (C.D. Cal. 1995). . . . . . . . . . . . . . 4

11  *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713, 717 (S.D. In. 1991).. . . . . . . . . . . 13

12  *Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002). . . . . . . . . . . . . . . . 4

13  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F3d 370, 377 (5th Cir. 2004). . . . . 4

14  *United States v. White*, 893 F.Supp. 1423, 1428 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . 4

15

16  **FEDERAL STATUTES**

17  28 U.S.C. §1332.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18  **FEDERAL RULES**

19  Fed. R. Civ. P. Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20

21  **OTHER AUTHORITIES**

22  California Civil Jury Instructions No. 325.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23  Schwarzer, et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, Chap. 9-D, §9:188. . . . . . . . . 4

24  Schwarzer, et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, Chap. 10-A, §10:13.5.. . . . . . 13

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

This is a diversity action pursuant to 28 U.S.C. §1332.  Plaintiff has sued from breach of contract, breach of the covenant of good faith and fair dealing, fraud, declaratory judgment, promissory estoppel and unjust enrichment, and it has attached the operative contract documents to its complaint.  The operative documents provide, and Plaintiff Co-Investor AG ("AG") alleges in its complaint at ¶28 [1], that the internal laws of California govern the claims being pursued by AG.

Defendant Fonjax moves to dismiss each of the claims for relief alleged by AG for failure to state claims upon which relief may be granted.

## I.    FACTS

Plaintiff Co-Investor AG ("AG"), a Swiss company, is an independent private equity company that supports companies looking for capital investment in key development phases.  ¶4. Defendant Fonjax, Inc. ("Fonjax"), a Delaware corporation with its principal place of business in Walnut Creek, CA, provides a service for the testing of mobile technology software.  ¶6.

On November 30, 2006, Fonjax and several purchasers, including AG, entered into the Series A Stock Purchase Agreement ("SPA") which is attached to the complaint as Exhibit A.  In §2.3 of the SPA, AG was defined as the Multiple Tranche Purchaser.  As reflected in the Schedule of Purchasers attached as Exhibit A to the SPA, AG actually made two purchases of preferred stock: one purchase of 511,448 shares for $266,563, and a second purchase of 1,458,147 shares for $1,499,998.  This latter purchase was to be paid for in three tranches [2] of (I) $426,220.00 for 422,000 shares, (ii) $299,999.29 for 297,029 shares, and (iii) $773,779.18 for 766,118 shares.  ¶7; Exh. A to Exh A.  AG was required to purchase the second tranche by February 28, 2007 and the third tranche by April 30, 2007.  Exh. A, p. 2, §2.3.

---

[1]All references to facts drawn from the complaint shall be denominated by ¶_ to indicate the paragraph number in the complaint from which the facts are drawn.  All references to exhibits to the complaint and facts drawn from those exhibits shall be denominate as Exh. _, p. _, § _ to indicate the Exhibit Number, page number, and where available, section number from which the facts are drawn.

[2]A "tranche" is a piece, portion or slice of a deal or structured financing.

In late April, 2007, before the funding of the third tranche came due, AG sought an extension of time from Fonjax for the $773,779.18 payment which was coming due on April 30, 2007.  ¶12. The parties reached an agreement on the extension and an April 30, 2007 they entered into an Amendment To Series A Preferred Stock Purchase Agreement ("Amendment to the SPA").  ¶¶12, 15, and Exh. E.  Under the Amendment to the SPA, AG closed on its purchase of the entire third tranche 766,118 shares on or before April 30, 2007, and it AG agreed to an immediate payment of $199,999.19 and to finance payment of the balance owed.  Exh. E at §2.3, pp. 1-2.  Fonjax agreed to carry the unpaid balance of $573,779.99 in the form of three promissory notes, each accruing interest at the rate of 9% per annum.  ¶12; Exh. E, §2.3, pp. 1-2.  Copies of the notes, which are attached to the complaint as Exh. C, reflect that they had respective maturity dates of May 31, 2007, June 30, 2007 and July 31, 2007, with respective note amounts of $199,199.19, $199,199.19, and $173,781.61 plus  accrued interest on each of the three notes.  Exh. C; ¶12.

The Amendment to the SPA provides in pertinent part (Exh. E, §2.3 at p. 2) as follows:

> . . . the failure of [AG] to: . . . (iii) pay the principal and accrued interest due on each of the Third Tranche Notes on their respective maturity dates (as defined in the Third Tranche Notes), shall result in the implementation of the special mandatory conversion. . . .

In  conjunction with the parties agreement to amend the SPA, the Second Amended and Restated Certificate of Incorporation of Fonjax, Inc. (Exh. B) was amended in a Certificate of Amendment to the Second Amended and Restated Certificate of Incorporation of Fonjax, Inc., attached to the complaint as Exh. D.  ¶13.  This Amendment to the Second Amended Restated Certificate provides in §1 in pertinent part as follows:

> 7.    **Special Mandatory Conversion.**
>
> (a)    **Failure to Participate**.    In the event that [AG] . . . fails to provide evidence of the payment of the principal and accrued interest due on each of the Third Tranche Notes . . . on their respective maturity dates, then all of [AG's] shares of Series A Preferred Stock shall automatically and without further action on the part of such holder, be converted, effective as of the date one business day after the maturity date of any Third Tranche Note for which evidence of payment has not been so provided. . . .

In other words, under the agreed terms of the extension, AG was required to provide evidence of timely payment of the principal **"and accrued interest due"** on each of the three notes by the

respective maturity dates of each of the three notes, and the consequence of the failure to make the payments by the required deadlines would be that the Series A Preferred Stock would convert to common stock **"automatically and without further action on the part of Fonjax"** pursuant to a formula set forth in the Amendment to the Second Amended Restated Certificate.

The first of the three Third Tranche notes provides "Unpaid principal together with all accrued interest shall be due and payable at 5:00 p.m. California time on May 31, 2007." ¶16; Exh. C at second paragraph of first note. On May 31, 2007, AG initiated a wire transfer of funds to Fonjax in the amount of $200,000.00. ¶17. The actual amount due on May 31, 2007, including accrued interest, was $201,527.95 ($199,999.19 principal plus $1,528.76 interest[3]). The note provides that "Payments received shall be first applied to the payment of accrued interest and then to the satisfaction of principal." Therefore, after applying $1,528.76 of the $200,000.00 payment toward payment of interest, only $198,471.24 of the $199,999.19 of the principal that was required to be paid on May 31, 2007 was actually paid. In other words, the required payment of entire principal was short by $1,527.95. AG did not make a further payment until July 3, 2007, at which time it paid $1,726 to Fonjax. ¶19.

Upon AG's failure to make the required payment of principal and all accrued interest by 5:00 p.m. on May 31, 2007 in accordance with the terms of the first note, the Amendment to the SPA and the Amendment to the Second Amended and Restated Certificate, AG's preferred shares converted to common stock in accordance with the conversion formula "automatically and without further action on the part of [Fonjax]. . . ."

**II.    ARGUMENT**

   **A.    STANDARDS APPLICABLE TO THIS MOTION TO DISMISS.**

A Rule 12(b)(6) motion tests the legal sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. *Conley*

---

[3]The note provides for "interest calculated "from the date hereof [to wit, April 30, 2007] at the rate of 9.00% per annum (on the basis of a year of 365 days), simple interest, on the unpaid balance of said principal sum." 31 days of interest at 9% on a principal balance of $199,999.19 equals $1,528.76.

1     *v. Gibson*, 355 US 41, 45-46, 78 S.Ct. 99, 102 (1957); *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th

2     Cir. 1978); *SEC v. Cross Fin'l Services, Inc.*, 908 F.Supp. 718, 726-727 (C.D. Cal. 1995); *Beliveau*

3     *v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995); *United States v. White*, 893 F.Supp. 1423, 1428

4     (C.D. Cal. 1995).

5        In ruling on a Rule 12(b)(6) motion, the court must: construe the complaint in the light most

6     favorable to the plaintiff, accept all well-pleaded allegations as true, and determine whether those

7     allegations, if proved, establish a valid claim for relief (i.e., a right enforceable under applicable

8     substantive law.  Schwarzer, et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, Chap. 9-D,

9     §9:188.

10        As an exception to the well-pleaded allegations standard, the court may disregard allegations

11     in the complaint if contradicted by facts established by reference to documents attached as exhibits

12     to the complaint.  *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.

13     1975) ; see *Durning v. First Boston Corp.* 815 F2d 1265, 1267 (9th Cir. 1987).  "(W)hen a written

14     instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the*

15     *allegations*." *Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis

16     in original; internal quotes omitted); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355

17     F3d 370, 377 (5th Cir. 2004).

18        **B.**    **THE FIRST CLAIM FOR RELIEF FOR BREACH OF CONTRACT FAILS**

19             **TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

20        AG's first claim for relief for breach of contract is predicated upon ¶¶30 and 31 of its

21     complaint.  In ¶30, AG alleges that it made all the required payments of principal and interest and

     thus satisfied the "to purchase" and "to pay" requirements of §2.3 of the SPA.

22        But other allegations of AG's complaint demonstrate that the allegations of §30 are false.

23     In ¶17, AG admitted that it paid only $200,000 on May 31, 2007.  Based upon the contents of the

24     exhibits to the complaint, it has been demonstrated that the $200,000 paid on May 31, 2007 was an

25     amount demonstrably less than the amount of principal and all accrued interest which was due on

26     May 31, 2007.  Thus, AG admitted in ¶19 that it was not until July 3, 2007 that it paid  the balance

27

28

of the amount that was required to be paid on May 31, 2007.  AG further admitted in ¶33 that it was late in making its May, 2007 payment in full.

§2.3 of the Amendment to the SPA, as well as the Amendment to the Second Amended Restated Certificate and the first of the three Third Tranche notes all unambiguously required that all the principal and **_all_** the accrued interest had to be paid in full by 5:00 p.m. on May 31, 2007. There is no ambiguity in any of these three provisions.  "All" means all; "all" does not mean almost all.  Based upon AG's own admissions in its complaint, the allegations of ¶31 are false, since AG did not pay all the principal and accrued interest that was due and payable on May 31, 2007.

In ¶31, AG implies that under Article 8.5 of the SPA and Article 7(b) of the Certificate of Amendment, Fonjax was somehow obligated to ask AG to deliver its converted shares.  AG further implies that Fonjax had some kind of obligation under Article 8.5 of the SPA to give written notice to AG to  turn over the converted share certificates.

Article 8.5 of the SPA (Exh. A) reads in its entirety as follows:

> **Notices, Etc.**  All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given (I) upon actual delivery to the party to be notified, (ii) 24 hours after confirmed facsimile transmission, or (iii) one business day after deposit with a recognized overnight courier, address (a) if to the Purchaser, at the Purchaser's address set forth on the Schedule of Purchasers, or at such other address as the Purchaser shall have furnished to the Company in writing upon 10 days' notice, (b) if to any other holder of any Securities, at such address as such holder shall have furnished the Company in writing upon 10 days' notice or, until any such holder so furnishes an address to the Company, to and at the address of the last holder of such Securities who has so furnished an address to the Company or (c) if to the Company, at the following address . . . or at such other address as the Company shall have furnished to the Purchaser upon 10 days' notice.

Article 7(b) of the Amendment to the Second Amended Restated Certificate (Exh. D) reads in its entirety as follows:

> **Mechanics of Conversion.**  The holder of any shares of Series A Preferred Stock converted pursuant to this Section 7 shall deliver to the Corporation during regular business hours at the office of any transfer agent or the Corporation for the Series A Preferred Stock, or at such other place as may be designated by Corporation, the certificate or certificates for the shares so converted, duly endorsed or assigned in blank or to the Corporation.  As promptly as practicable thereafter, the Corporation shall issue and deliver to such holder, at the place designated by such holder, a certificate or certificates for the number of full shares of the Common Stock to be issued and such holder shall be deemed to have become a stockholder of record of Common Stock on the Conversion Date unless the transfer books of the Corporation are closed on that date, in which event such holder shall be deemed to have become

1    a stockholder of record of Common Stock on the next succeeding date on which the
     transfer books are open.  From and after the Conversion Date the certificate or
2    certificates representing shares of Series A Preferred Stock converted pursuant to this
     Section 7 shall represent the shares of Common Stock into which such shares of
3    Series A Preferred Stock were converted.

4        Contrary to the allegations of ¶31, there is nothing in either Article 8.5 or Article 7(b) from

5    which one could conclude or imply that Fonjax had any kind of obligation to provide notice to AG,

6    written or otherwise, when AG failed to make the requisite payment in full on May 31, 2007.  Article

7    8.5 merely sets forth the mechanics for how and where notices are to be served in those

8    circumstances where notice is permitted or required.  It nowhere defines the circumstances in which

9    notices may be required.

10       Article 7(b) merely sets forth the mechanics for the purchasers of Series A Preferred Stock

11   to return their shares to Fonjax once a conversion has occurred "pursuant to this Section 7."  Under

12   Article 7(a), a conversion of AG's preferred shares occurred on June 1, 2007 because it failed to pay

13   all of the principal and accrued interest which it was required to pay on May 31, 2007.  Under Article

14   7(a), this conversion occurred "automatically and without further action on the part of [Fonjax]."

15   Contrary to the allegations of ¶31, "automatically and without further action means" AG did not have

16   to be served with notice of any kind in order for the conversion to occur.  If any party is in breach,

17   it is AG for failure to deliver up its converted shares as it was required to do under Article 7(b).

18       ¶32 contains the specious allegations that Fonjax was in breach of the SPA [actually this

19   should be the Amendment to the SPA] by not delivering the Series A Preferred Stock and by taking

20   action to convert the Series A Preferred Stock in violation of the SPA.  As for the first part of this

21   allegation, all the Series A Preferred Stock was delivered to AG on or before the close of business

22   on April 30, 2007.  As already noted, under §2.3 of the Amendment to the SPA, the Third Tranche

23   Closing occurred on April 30, 2007, and in exchange, AG made payment in the form of a

24   $199,999.19 plus the three promissory notes.  There were no shares to deliver.

25       As to the allegation that Fonjax breached the Amendment to the SPA by converting the

26   preferred stock to common stock, the complaint does not identify any basis for the alleged breach

27   other than those in ¶30 and 31, which have already been addressed.

28

Fonjax's MPAs re Mot to Dismiss
C08-01812 SBA                              6

In ¶33, AG alleges that Fonjax did not suffer prejudice or damage as a result of any delay in the payment of interest due under the May Third Tranche Note.  Assuming this was true, it is irrelevant to the issue of whether Fonjax breached its contract with AG.  There is nothing in the contract requiring Fonjax to have suffered prejudice or damage as a condition to enforcing the conversion provisions of the contract.  Indeed, by its terms, the conversion occurred automatically and without any further action on the part of Fonjax.

Moreover, Fonjax did not have the use of all the money it was supposed to have as of May 31, 2007.  AG admits that it was over a month before Fonjax was paid the balance of what is was owed.  When a party does not have in its possession money it is supposed to have because the other party does not pay the money on time, this results in both damages and prejudice.

In ¶34, AG alleges that Fonjax breached its contract by converting all of AG's preferred shares rather than just the 1,485,147 shares it acquired under the SPA (Exh. A).  Exhibit A to the SPA is the Schedule of Purchasers, which shows that AG actually purchased a total of 1,996,595 shares and not just the 1,485,147 it alleges it acquired under the SPA.  Article 7(a) of the Amendment to the Second Amended Restated Certificate (Exh. D) provides that if AG fails to make a timely payment, "then **_all_** of [AG's] shares of Series A Preferred Stock shall automatically and without further action on the part of such holder, be converted, . . . ."  Thus, Fonjax did not breach the SPA by converting all of AG's shares, since this is what was required under the Amendment to the Second Amended Restated Certificate.

In sum, the false and misleading allegations of AG's complaint are belied by the language of the documents that AG has appended to its complaint.  It is clear that AG cannot establish a breach of any of the contract documents by Fonjax.  Accordingly, the first cause of action for breach of contract fails to state a claim upon which relief may be granted., and it should be dismissed.

### C.  THE SECOND CLAIM FOR RELIEF FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### 1.  THE COMPLAINT DOES NOT PLEAD THE REQUISITE ELEMENTS OF A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

To state a claim for breach of the covenant of good faith and fair dealing, AG must allege (a) a contract; (b) AG's performance or excuse for non-performance; (c) occurrence of all requisite conditions; (d) Fonjax' unfair interference with AG's right to receive the benefits of the contract; and (e) resulting damages.  California Civil Jury Instructions No. 325.

> A breach of implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself ... [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement .... If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as 'superfluous' as no additional claim is actually stated.  [*Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1393, 272 Cal.Rptr. 387 (1990)] at 1394-95, 272 Cal.Rptr. 387.

*Hougue v. City of Holtville*, 2008 WL 1925249 at p. 4 (S.D. Cal. 2008) (Attachment 1 to this motion).

Here, the requisite allegations are missing.  In particular, there is no allegation of full performance of AG's obligations.  Nor could AG make such an allegation consistent with Rule 11, since AG has already admitted that it did not fully perform all of it required obligations; to the contrary, AG admits in its complaint that it underpaid the May 31, 2007 payment.  Further, the documents attached to the complaint establish that Fonjax took no steps to interfere with AG's right to receive the benefits of its contract with Fonjax.  Under the terms agreed to by the parties, AG's shares converted not because of anything that Fonjax did.  Rather, the shares converted "automatically and without further action" on the part of Fonjax immediately upon Fonjax' failure to make the May 2007 payment of "principal and all accrued interest" by the May 31, 2007, 5:00 p.m. deadline.

1  Moreover, AG received exactly what it bargained for under the contract; AG can point to no

2  benefits that it was deprived of.  Upon failure to make timely payment in full, AG's preferred stock

3  is required to automatically convert to common stock, and this is precisely what has occurred.

4  Finally, as in *Hougue, supra*, AG's claim fails to allege that Fonjax' alleged breach was

5  motivated by a conscious and deliberate act which unfairly frustrated the agreed common purposes

6  of the parties and disappointed AG's reasonable expectations.  Thus, as in *Hogue*, AG's claim for

7  breach of the covenant of good faith and fair dealing should be disregarded as superfluous as no

8  additional claim has actually been stated.

9  For this reason, the second claim for breach of the covenant of good faith and fair dealing

10  fails to state a claim upon which relief may be granted, and it should be dismissed.

11  **2.    EVEN IF THE COMPLAINT ALLEGATIONS VIEWED IN
12  ISOLATION ARE SUFFICIENT TO STATE A CLAIM FOR BREACH
    OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, THE
    ACCURACY OF THE ALLEGATIONS IS BELIED BY THE
13  CONTENT OF THE ATTACHED DOCUMENTS.**

14  In ¶¶38 and 39, AG alleges that the Fonjax breached the covenant of good faith and fair

15  dealing by interpreting the contract documents in such a way so as to cause a conversion of AG's

16  preferred shares.  The disputation of Fonjax' interpretation of contract documents is but a roundabout

17  way of saying Fonjax committed a breach of contract, and nothing more.

18  The language of the documents has been set forth verbatim for this Court's review.  Contrary

19  to the allegations of the complaint, there was nothing ambiguous about the contract language, and

20  there was nothing in the contract language which was open to conflicting interpretations, and AG

21  does not describe any ambiguities or conflicting interpretations of the contract language in its

22  complaint.  Contrary to the allegations of the complaint, the documents attached to the complaint

23  clearly, succinctly and unambiguously required that all note payments, including all principal and

24  interest, be paid by the very precise deadline specified in the contract documents.  These same

25  documents spelled out in precise and unambiguous terms that any failure to meeting the deadline,

26  would result in the automatic conversion of all of AG's preferred shares to common shares.  AG did

27  not pay on time, and it's shares converted.  It is that simple.

28

For this additional reason, the second claim for breach of the covenant of good faith and fair dealing fails to state a claim upon which relief may be granted, and it should be dismissed.

**D.    THE THIRD CLAIM FOR RELIEF FOR FRAUD FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

As previously discussed, the original SPA between Fonjax and AG provides for the purchase by AG of 1,458,147 shares for $1,499,998, in three tranches of (I) $426,220.00 for 422,000 shares payable upon execution of the agreement, (ii) $299,999.29 for 297,029 shares payable by February 28, 2007, and (iii) $773,779.18 for 766,118 shares payable by April 30, 2007. AG closed on its purchase of the first two tranches. It was only in late April, 2007, when the deadline for closing on the purchase of the third tranche was upon AG that AG requested a revision of the purchase agreements so that it could make installment payments on the third tranche.

Fonjax agreed to modify the terms of the SPA so that AG could have additional time to pay for the third tranche, and that was the genesis of the three third tranche notes (Exh. C), the Certificate of Amendment to the Second Amended and Restated Certificate (Exh. D) and the Amendment to the SPA (Exh. E). Under both the terms of the original deal and the revised deal, AG had a deadline of April 30, 2007 to close on its purchase of the third tranche of 766,118 shares. (Exh. A, §2.3 at p. 2 ("on or before April 30, 2007, the Multiple Tranche Purchaser shall purchase 766,118 Shares . . . in a third tranche of the initial closing"); Exh. E, §2.3 at p. 2 ("on or before April 30, 2007, the Multiple Tranche Purchaser shall purchase 766,118 Shares in a third tranche of the initial closing"), and under both the original and the revised deal, AG was paying $773,779.18 for those shares (Fn. 2 of Exh. A to Exh. A, which applies to both the original SPA (Exh. A) and the Amendment to the SPA (Exh. E). AG did in fact close on its purchase of the entire tranche of 766,118 by the April 30, 2007 deadline.

The only thing that changed between the original deal and the revised deal is instead of having to pay the entire $773,779.18 by the April 30, 2007 deadline, that AG was given the right to make installment payments over an additional three month period (Exh. E, §2,3 at p. 2 "The payment of the Third Tranche Shares at the Third Tranche Closing shall consist of a wire transfer by the Multiple Tranche Purchaser to the Company of $199,999.19 and the issuance of three promissory

1   notes payable to the Company (the 'Third Tranche Notes'), in the forms attached [to the complaint

2   as Exh. C].")  In other words, AG acquired ownership of all the shares by April 30, 2007, and its

3   obligation to pay for all of these shares never changed.

4          In particular, there is absolutely nothing in any of the contract documents which absolved AG

5   of its obligation to pay for its purchase of the entire block of 766,118 shares on April 30, 2007.

6   Thus, the fact that AG was untimely in the paying of principal and interest when it made its May

7   payment, which resulted in the conversion of all of its shares to common stock, in no way absolved

8   AG of its obligation to pay all the principal and interest due under th June, 2007 and July, 2007

9   notes.

10         It is against this background that the fraud cause of action must be assessed.  In ¶46, AG

11  alleges that Fonjax asked AG to make the additional payments it owed under the June and July notes

12  without informing AG that the stock conversion had occurred on June 1, 2007.  There is no

13  allegation that Fonjax had any duty to inform AG of the conversion, and the contract documents

14  include no such requirement.  To the contrary, as noted, the documents make clear, and it should

15  have been no surprise to AG, that the conversion occurred automatically upon its failure to timely

16  pay all principal and interest that was due on May 31, 2007.  AG still owed the June and July

17  payments, and Fonjax had every right to ask for them.  If AG failed to make these payments of

18  principal and interest, it would have been in breach.

19         The allegations of ¶47 are belied by the contract documents.  Fonjax did not have to "effect[]

20  or attempt[] to complete the conversion" of AG's stock since, as discussed, the conversion occurred

21  automatically without any action on the part of Fonjax.  Nor did Fonjax "dupe" AG into make two

22  payments of $200,000 plus interest.  According to the complaint, Fonjax did no more than ask AG

23  to make its required payments, and AG did so.  AG knew (or it should have known) that the

24  automatic conversion provision took effect upon its failure to make the required payment in full on

25  May 31, 2007, and it proceeded to make the June and July payments with this awareness.  AG

26  alleges no intentional misrepresentation of any material fact by Fonjax, and it alleges no justifiable

27  reliance based upon an intentional misrepresentation of material fact by Fonjax.

28

1    In ¶48, AG alleges that it was not asked by Fonjax to submit its Series A certificates for

2    conversion.  But AG does not allege that Fonjax had any obligation to make such a request.   Nor

3    could AG make such an allegation consistent with Rule 11.  Article 7(b) of the Amendment to the

4    Second Amended Restated Certificate (Exh. D), entitled "Mechanics of Conversion," merely

5    requires that  "[t]he holder of any shares of Series A Preferred Stock converted pursuant to this

6    Section 7 shall deliver to the Corporation during regular business hours at the office of any transfer

7    agent or the Corporation for the Series A Preferred Stock, or at such other place as may be

8    designated by Corporation, the certificate or certificates for the shares so converted, duly endorsed

9    or assigned in blank or to the Corporation."  Thus, the contract documents placed the burden upon

10   AG to return the converted shares to Fonjax upon their conversion.  Nothing in the contract

11   documents obligated Fonjax to ask AG to return the converted shares.

12   In ¶48, AG further alleges that Fonjax continued to represent that AG's payments were for

13   the Series A Preferred Stock.  Assuming Fonjax made this representation, as has already been shown,

14   this was a true statement.

15   In ¶49, AG alleges that "Fonjax knew that the remaining Third Tranche Notes were being

16   paid, but that Series A Preferred Stock would not be conferred."  This allegation flies in the face of

17   the contract documents, since there clearly was nothing more to confer.  As already discussed, AG

18   closed on its purchase of the Third Tranche shares on April 30, 2007, and it owns all the shares it

19   was going to own as of that date.  In the months of May, June and July, 2007, it was merely paying

20   for what it had already acquired.  Thus, when AG made the June and July payments, there were no

21   more shares for Fonjax to confer.

22   The same problems exist with AG's ¶50.  The contract documents establish that the June and

23   July payments were not for common stock as alleged by AG.  The June and July payments were for

24   the shares of Preferred stock that AG purchased in April.

25   AG was party to a contract and to promissory notes which obligated it to make these

26   payments when it closed on its purchase of the 766,118 shares on April 30, 2007.  As noted, the

27   conversion of AG's stock on June 1, 2007 did not absolve it of its payment obligations.  In an

28

1   analogous situation, an individual who accepts seller financing to purchase his house is not absolved

2   of his obligation to repay the loan just because the house burned down.

3          For these reasons, the third claim for fraud fails to state a claim upon which relief may be

4   granted, and it should be dismissed.

5   **E.     THE FOURTH CLAIM FOR RELIEF FOR A DECLARATORY JUDGMENT
           FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

6

7          The fourth claim for declaratory judgment does not more than incorporate the allegations of

8   the first three claims for relief.  AG is not seeking declaratory relief of a disputed contractual

9   provision to guide its future conduct in an effort to avoid a future damages claim.  Rather, it is

10  seeking interpretation of contract documents to establish a breach that AG alleges has already

    occurred.

11

12          [T]he availability of other adequate remedies may make declaratory relief
            "inappropriate." [*Beacon Const. Co. v. Matco Elec. Co., Inc.*, 521 F2d 392, 397 (2nd

13          Cir. 1975)].  Thus, the court has discretion to dismiss a suit for declaratory relief that
            simply seeks to establish a party's right to damages for breach of contract. I.e., where

14          determination of the breach of contract claim would resolve any question regarding
            interpretation of the contract, there is no need for declaratory relief. [*The Pantry, Inc.
            v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713, 717 (S.D. In. 1991).

15

16  Schwarzer, et al., *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial*, Chap. 10-A, §10:13.5.  *See also*

17  *Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.* 2007 WL 1101456, p. 5 (E.D. Cal. 2007) (Attachment 2

    to this motion):

18

19          Defendant also moves to dismiss Plaintiffs' claim for "declaratory relief."  Like
            Plaintiffs' claim for specific performance, this claim is also properly a prayer for

20          relief and not a stand-alone claim.  Plaintiffs cite no authority for the proposition that
            declaratory relief is a stand-alone cause of action as opposed to relief which the Court

21          may give for breach of contract.  Moreover, the declaration Plaintiffs seek is that their
            interpretation of the contract prevails.  Thus, a separate claim for declaratory relief

22          is duplicative of Plaintiffs' breach of contract claim because the Court must interpret
            the contract and resolve the underlying contractual dispute to determine if declaratory
            relief is appropriate.

23

24          For this reason, the fourth  claim for declaratory judgment fails to state a claim upon which

    relief may be granted, and it should be dismissed.

25

26  **F.     THE FIFTH CLAIM FOR RELIEF FOR PROMISSORY ESTOPPEL FAILS
           TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

27          AG's claim for promissory estoppel must fail for the same reasons as the previous claims.

28  The basis of this claim is found in ¶58, where AG alleges that "in the SPA, Fonjax promised to

Fonjax's MPAs re Mot to Dismiss
C08-01812 SBA                          13

inform Co-Investor should the agreed upon conversion mechanism for the Series A Preferred Stock be triggered." Quite to the contrary, it has already been shown that the contract documents do not require Fonjax to notify AG if the conversion mechanism is going to be triggered. Rather, under the contract documents, the conversion mechanism was triggered automatically upon AG's failure to make timely payment of all principal and interest by May 31, 2007.

Since the predicate of the promissory estoppel cause of action is belied by the contract documents, the fifth claim for promissory estoppel fails to state a claim upon which relief may be granted, and it should be dismissed.

### G.    THE SIXTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

AG's claim for unjust enrichments merely incorporates the prior allegations of the complaint as the basis for this claim for relief. Since the prior claims should all be dismissed, the unjust enrichment cause of action should also be dismissed.

## III.    CONCLUSION

For all of the foregoing reasons, each of the causes of action alleged in AG's complaint should be dismissed in their entirety.


Dated: June 2 , 2008                    YUDIEN & ASSOCIATES


                                        By:_____
                                            Jordan J. Yudien, Esq.
                                            Attorneys for Defendant Fonjax, Inc.

1

2

## ATTACHMENT 1 TO MOTION TO DISMISS

3

Slip Copy                                                    Page 1

4

Slip Copy, 2008 WL 1925249 (S.D.Cal.)

(Cite as: 2008 WL 1925249 (S.D.Cal.))

5

6

Hougue v. City of Holtville

7   S.D.Cal.,2008.

Only the Westlaw citation is currently available.

8           United States District Court,S.D. California.

William A. HOUGUE, by and through his Guardian Ad

9           Litem Cassi DePaoli, Plaintiff,

v.

10   CITY OF HOLTVILLE, A Public Entity; Officer Barry

Forney, an Individual; Officer Thomas IP, an

11       Individual; Blossom Valley Inn, business form

unknown, Tina Toten, an Individual; Nurse Doe # 21,

12     an Individual; and Does 1 through 100, Inclusive,

Defendants.

13           **No. 07cv2229 WQH (WMc).**

14

April 30, 2008.

15

16   Robert A. Espinoza, Espinosa and Espinosa, El Centro,

CA, Terry Singleton, Singleton and Associates, San

17   Diego, CA, for Plaintiff.

John P. McCormick, Konrad Muth Rasmussen,

18   McCormick and Mitchell, San Diego, CA, for Defendants.

19

**ORDER**

20

21   HAYES, District Judge.

**\*1** The matter before the Court is the Motion to Dismiss

22   (Doc. # 7) filed by Defendant Blossom Valley Inn.

23

***Background***

24

25

26

27

28

On November 21, 2007, Plaintiff William A. Hogue, by and through his guardian ad litem Cassi DePaoli, filed the Complaint against the City of Holtville, individual police officers of the City of Holtville, the Blossom Valley Inn, individual employees of the Blossom Valley Inn,[FN1] and Does 1-100.

> FN1. The Court will refer to Blossom Valley Inn and the individual employees of Blossom Valley Inn collectively as "Blossom Valley."

The Complaint alleges that Plaintiff is 80 years old and suffers from Alzheimer's disease. *Complaint,* ¶ 13. The Complaint alleges that Blossom Valley represented to Plaintiff and his family that Blossom Valley and its staff were "fully trained and 'set up' to care for residents suffering from Alzheimer's."*Id.* The Complaint alleges that on January 10, 2007, Plaintiff and Blossom Valley entered into a written contract whereby Blossom Valley "represented and agreed that its facility was appropriate for patients with dementia,""agreed that plaintiff would be properly secured and maintained within a 24 hour facility," and "agreed to provide and monitor plaintiff within a secure environment with alarms and cameras to monitor plaintiff's movements and condition."*Id.* at ¶ 44.Plaintiff alleges that on January 10, 2007, he took up residence at the Blossom Valley Inn due to his "mental incapacity resulting from Alzheimer's disease."*Id.* at ¶ 13.

Plaintiff alleges that on January 10, 2007, at 10:30 p.m., while Plaintiff was under the care of Blossom Valley, Plaintiff walked out the front door, setting off the alarm. *Id.* at ¶ 14.Plaintiff alleges that after hearing the alarm, Blossom Valley employees followed Plaintiff outside the facility and down the street in an attempt to get him to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1

voluntarily return. Plaintiff alleges that the employees' efforts failed and an unknown employee called the Holtville City Police Department to assist Plaintiff in returning to the facility. *Id.* Plaintiff alleges that he had already turned back to the facility when two police officers arrived, one of whom "immediately confronted [Plaintiff] in a hostile manner" and demanded Plaintiff to "tell his name and stop where he was."*Id.* at ¶ 15.Plaintiff alleges that he failed to "immediately respond" to officers' commands, and that the officers "brutally assaulted [him] by grabbing him on either side and slamming him face down on the ground, and while kneeling on his back, forcefully [handcuffing] him behind his back."*Id.* Plaintiff alleges that both officers then lifted him up by the handcuffs, which caused a "severe fracture" of Plaintiff's left arm. *Id.*

Plaintiff alleges that Blossom Valley never attempted "to intervene on Plaintiff's behalf, or make any attempt whatsoever to protect Plaintiff from the brutality of [the officers], or subsequently attempt to render emergency aid and comfort to Plaintiff."*Id.* at ¶ 17.Plaintiff alleges that after he was arrested, he was transported to the hospital for medical care. *Id.* at ¶ 18.Plaintiff alleges that his injuries were so severe that surgery could not be performed to repair the injuries, and he was subsequently released to Blossom Valley. *Id.* at ¶ 19.

**\*2** On December 28, 2007, Blossom Valley filed the Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 7). Blossom Valley moves to dismiss the following causes of action for failure to state a claim: (1) the fifth cause of action for breach of written contract; (2) the sixth cause of action for breach of implied covenant of good faith and fair dealing; (3) the eighth cause of action for general negligence; (4) the ninth cause of action for elder neglect and abuse; (5) the tenth cause of action for fraudulent misrepresentation; and (6) the eleventh cause of action for negligent misrepresentation. *Id.* at 2. On January 22, 2008, Plaintiff filed an opposition to the motion to dismiss. (Doc. # 15). On January 28, 2008, Blossom filed a reply. (Doc. # 17).

### *Standard of Review*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the pleadings. *See De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where the factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See id.*(citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir.2003); *see also Chang v. Chen,* 80 F.3d 1293 (9th Cir.1996).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...."FED R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Bell Atlantic,* 127 S.Ct. at 1964 (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### *Discussion*

### I. Breach of Written Contract

Blossom Valley contends that the Complaint fails to state a claim for breach of written contract because Plaintiff failed to set forth the exact language of the alleged contract between Plaintiff and Blossom Valley, and failed to attach the contract to the Complaint. Blossom Valley also contends that Plaintiff failed to set forth specific facts

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

regarding how the contract was breached. *Mot. to Dismiss,* p. 8.

Plaintiff opposes the motion to dismiss the cause of action for breach of written contract on grounds that a "careful review of the allegations in this cause of action, along with others, makes clear" Plaintiff has properly alleged breach of written contract. *Opp.,* p. 7.

**\*3** In order to state a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortgage Co. v. Reece,* 89 Cal.App.4th 731, 745, 108 Cal.Rptr.2d 23 (Cal. Ct. Appeal 2001); 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570. "In an action based on a written contract, a plaintiff may plead the legal effect of the contract rather than its precise language." *Constr. Protective Servs., Inc., v. TIG Specialty Ins. Co.,* 29 Cal.4th 189, 198-99, 126 Cal.Rptr.2d 908, 57 P.3d 372 (2002).

Plaintiff alleges that on January 10, 2007, he entered into a written contract with Blossom Valley that contained the following terms:

> Defendants represented and agreed that its facility was appropriate for patients with dementia. Defendants further agreed that plaintiff would be properly secured and maintained within a 24 hour facility and further agreed to provide and monitor plaintiff within a secure environment with alarms and cameras to monitor plaintiff's movements and condition.

*Compl.,* ¶ 44. Plaintiff alleges the existence of a contract. Plaintiff alleges that he "performed all obligations to [Blossom Valley] except those obligations [he] was prevented or excused from performing." *Id.* at ¶ 46, 126 Cal.Rptr.2d 908, 57 P.3d 372. Plaintiff alleges that "Defendants, and each of them" breached the contract by:

"(a) Failing and refusing to keep Plaintiff safe and secure in his person at all times; (b) Failing and refusing to adequately, appropriately and competently provide care to Plaintiff as an Alzheimer's patient; and (c) Allowing Plaintiff to wander off of the premises by himself resulting in serious injuries to Plaintiff." *Id.* at ¶ 45, 126 Cal.Rptr.2d 908, 57 P.3d 372. Plaintiff alleges that these breaches caused Plaintiff to suffer injury. *Id.* at ¶ 47, 126 Cal.Rptr.2d 908, 57 P.3d 372. The Court concludes that Plaintiff has alleged the legal effect of the contract, which is sufficient to state claim for breach of written contract. Viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff alleges facts that could support a claim for breach of written contract. The motion to dismiss the cause of action for breach of written contract is denied.

### II. Breach of Implied Covenant of Good Faith & Fair Dealing

Blossom Valley contends that Plaintiff's claim for breach of implied covenant of good faith and fair dealing derives from his breach of contract claim, and therefore fails to state a claim for the same reasons as the breach of contract claim. *Mot. to Dismiss,* p. 10. Blossom Valley asserts that "Plaintiff cannot [possibly] prove Blossom Valley Inn breached an implied term if it never breached an actual term and has never set forth any term precisely." *Id.*

Plaintiff opposes the motion to dismiss the cause of action for breach of implied covenant of good faith and fair dealing on grounds that Plaintiff has adequately alleged elements for breach of implied covenant of good faith and fair dealing. *Opp.,* p. 8. Plaintiff contends that he has incorporated the allegations contained in the breach of contract claim, and that "a careful review of the allegations in this cause of action, along with others, makes clear that Plaintiff has properly [alleged] this cause of action as well." *Id.*

**\*4** In California, every contract contains an implied covenant that imposes on each party a "duty of good faith

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and fair dealing in each performance and its enforcement."*Careau & Co. v. Security Pac. Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1393, 272 Cal.Rptr. 387 (1990). This duty imposes "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."*Id.* However,

> [a] breach of implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself ... [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not be an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement .... If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as 'superfluous' as no additional claim is actually stated.

*Id.* at 1394-95, 272 Cal.Rptr. 387.

Plaintiff alleges that the written contract between Plaintiff and Blossom Valley "contained the implied-in-law covenant of good faith and fair dealing."*Compl.,* ¶ 50. Plaintiff alleges that Blossom Valley breached the implied covenant by "wrongfully failing and refusing to ensure [his] safety and security and protection from harm, in that not only was Plaintiff permitted to leave [Blossom Valley's premises], he was also subjected to the subsequent brutalization by [the police]."*Id.* at ¶ 51, 272 Cal.Rptr. 387. As previously discussed, Plaintiff has stated a claim for breach of written contract. However, the allegations in support of the cause of action for breach of implied covenant of good faith and fair dealing do not "go beyond the statement of a mere contract breach."*Careau,* 222 Cal.App.3d at 1395, 272 Cal.Rptr. 387. Plaintiff fails

to allege conduct attributable to Blossom Valley that was prompted by a "conscious and deliberate act, which unfairly frustrate [d]" the purposes of the parties' written contract. *Id.* Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to allege facts that could support a claim for breach of the implied covenant of good faith and fair dealing. The motion to dismiss the cause of action for breach of the implied covenant of good faith and fair dealing is granted.

### III. Negligence

Blossom Valley contends that the Complaint fails to state a claim against Blossom Valley for negligence because the negligence cause of action alleges that Blossom Valley owed Plaintiff a duty that does not exist. Blossom Valley contends that Plaintiff also fails to allege "a single fact" to show how Blossom Valley breached any alleged duty it owed to Plaintiff. *Mot. to Dismiss,* p. 11. Blossom Valley contends that "Plaintiff's charging allegations ignore the law enforcement privilege of law enforcement officials," and that once Plaintiff was apprehended by the police, Blossom Valley could not have breached any duty from that moment forward because Plaintiff was no longer in Blossom Valley's custody. *Id.* at 12, 272 Cal.Rptr. 387.

**\*5** Plaintiff opposes the motion to dismiss the claim against Blossom Valley for negligence on grounds that he has alleged all the necessary elements for negligence. *Opp.,* p. 9. Plaintiff contends that Blossom Valley "certainly had a duty to act reasonably and provide and/or keep the Plaintiff in a safe environment."*Id.* at 10, 272 Cal.Rptr. 387. Plaintiff contends that Blossom Valley "not only breached its duty but increased it by allowing the Plaintiff to leave and then recklessly calling the police."*Id.*

In order to state a claim for negligence, a plaintiff must allege: (1) a legal duty of care owed by defendant to plaintiff; (2) an act or omission by defendant that is breach of duty owed to plaintiff; (3) defendant's breach as the proximate cause of plaintiff's injury; and (4) damages to

plaintiff. *See Koepke v. Loo,* 18 Cal.App.4th 1444, 1448-49, 23 Cal.Rptr.2d 34 (1993); *Hoyem v. Manhattan Beach City School Dist.,* 22 Cal.3d 508, 513-14, 150 Cal.Rptr. 1, 585 P.2d 851 (1978). Professionals may be held to a standard of care that is "articulated in terms of exercising the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing."*Delaney v. Baker,* 20 Cal.4th 23, 31, 82 Cal.Rptr.2d 610, 971 P.2d 986 (1999).Section 340.5 of the California Code of Civil Procedure defines the standard of care for health care providers. Section 340.5 defines professional negligence as "a negligent act or omission to act by a health care provider in the rendering of professional services ... provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital."Cal.Code Civ. Proc. § 340.5.

The Complaint alleges that

[a]s a provider of residential services in an assisted living environment, and in particular for residents suffering from Alzheimer's disease, Defendants ... owed a duty to Plaintiff to use the ordinary skill and care in the course of their business conduct as assisted living providers and in so doing, to use such skill, prudence and diligence as assisted living providers of ordinary skill and capacity commonly possesses and exercises in performance of the tasks which they undertake.

*Compl,* ¶ 60. Plaintiff has adequately alleged that Blossom owed him a duty of care to act as an ordinary assisted living provider would. Plaintiff further alleges that

Defendants ... breached their duty to Plaintiff by failing to exercise reasonable care and skill in undertaking to perform such assisted living services, to wit, by failing and refusing to ensure Plaintiff's safety at all times and in all environments, and in particular, to ensure Plaintiff's safety at the hands of law enforcement officials in light of Plaintiff's mental incapacity.

*Id.* at ¶ 61, 82 Cal.Rptr.2d 610, 971 P.2d 986. Plaintiff has adequately alleged that Blossom breached its duty of care. Plaintiff adequately alleges proximate cause and damages through the allegation that Blossom's negligence "was the actual and proximate cause of damages suffered by Plaintiff."*Id.* at ¶ 64, 82 Cal.Rptr.2d 610, 971 P.2d 986. Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint alleges facts that could support a claim for negligence. The motion to dismiss Plaintiff's eight cause of action against Blossom Valley for negligence is denied.

**IV. Elder Neglect and Abuse**

**\*6** Blossom Valley contends that Plaintiff "cannot demonstrate the facts necessary to sustain an Elder Abuse claim which requires a high threshold of egregious conduct" because Plaintiff fails to adequately allege either "physical abuse" or "neglect" under the Elder Abuse and Dependent Adult Civil Protection Act, California Welfare and Institutions Code § § 15600, et seq. ("Elder Abuse Act").*Mot. to Dismiss,* p. 13. Blossom Valley contends that Elder Abuse Act claims are statutory causes of action that must be alleged with particularity. *Id.* at 16, 82 Cal.Rptr.2d 610, 971 P.2d 986. Blossom Valley contends that Plaintiff failed to allege facts establishing "physical abuse" because Plaintiff fails to allege that Blossom engaged in conduct proscribed in section 15610.63 of the California Welfare and Institutions Code (eg. assault, battery, assault with a deadly weapon, rape and sexual battery).*Id.* at 14, 82 Cal.Rptr.2d 610, 971 P.2d 986. Blossom Valley contends that Plaintiff has failed to allege facts establishing "neglect" because the allegation that Blossom Valley "failed to use the degree of care that a reasonable person in the same situation would have used" fails to "rise to the culpable conduct required of neglect under the Elder Abuse Act."*Id.*

Plaintiff opposes the motion to dismiss on grounds that "a careful review of the allegations ... makes clear that [he] properly pled" a cause of action under the Elder Abuse Act. *Opp.,* p. 12. Plaintiff contends that the allegation that Blossom Valley "fail[ed] to protect [him] from health and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5

safety hazards" is sufficient to state a claim for "physical abuse" under the Elder Abuse Act.*Id.* at 10, 82 Cal.Rptr.2d 610, 971 P.2d 986. Plaintiff contends that the allegation that Blossom Valley's employees "failed to use the degree of care that a reasonable person in the same situation would have used by [failing to protect Plaintiff from health and safety hazards]" is sufficient to state a claim for cause of action for "neglect" under the Elder Abuse Act. *Id.* at 11, 82 Cal.Rptr.2d 610, 971 P.2d 986.

To state a claim under the Elder Abuse Act, a plaintiff must allege that the defendant subjected an elder to statutorily defined physical abuse, neglect, or financial abuse, and acted with recklessness, malice, oppression, or fraud in the commission of the abuse. Welf. & Inst.Code §§ 15610.63, 15610.57, 15610.30, 15657; *Delaney v. Baker,* 20 Cal.4th 23, 35, 82 Cal.Rptr.2d 610, 971 P.2d 986 (1999).Section 15610.63 provides an exclusive list of conduct that constitutes "physical abuse." Such conduct includes assault, battery, prolonged deprivation of food and water, unreasonable physical restraint, and sexual assault. *Sabbin v. Superior Court,* 144 Cal.App.4th 81, 88, 50 Cal.Rptr.3d 266 (2006) (citing Cal. Wel. & Inst.Code § 15610.63).Section 15610.57 defines "neglect" as the "negligent failure of any person having the care or custody of an elder or dependent adult to exercise the degree of care that a reasonable person in a like position would exercise."Welf. & Inst.Code § 15610.57. Section 15610.57 provides that neglect includes, but is not limited to failure to assist in personal hygiene, failure to provide food, clothing, or shelter, failure to provide medical care for physical and mental health needs, failure to protect from health and safety hazards, and failure to prevent malnutrition or dehydration. *Sabbin,* 144 Cal.App.4th at 88, 50 Cal.Rptr.3d 266 (citing Cal. Welf. & Inst.Code § 15610.57)."[N]eglect refers not to the substandard performance of medical services but, rather, to the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations."*Id.* at 783, 50 Cal.Rptr.3d 266. The "acts proscribed [by the Elder Abuse Act] do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence."*Delaney v. Baker,* 20 Cal.4th 23,

32, 82 Cal.Rptr.2d 610, 971 P.2d 986 (1999). As a statutory cause of action, a claim under the Elder Abuse Act must be alleged with particularity. *Id.* at 790, 82 Cal.Rptr.2d 610, 971 P.2d 986.

**\*7** The Complaint alleges that Blossom Valley and its employees failed and refused to "ensure Plaintiff's safety at all times and in all environments, and in particular, to ensure Plaintiff's health and safety at the hands of law enforcement officials in light of Plaintiff's mental incapacity."*Compl.,* ¶ 69. The Complaint alleges that the Blossom Valley employees acted with "recklessness, malice, oppression and/or fraud," and that Blossom Valley "authorized these individual Defendants' conduct and/or knew of these individual Defendants' wrongful conduct and adopted or approved the conduct after it occurred."*Id.* at ¶¶ 70, 73, 82 Cal.Rptr.2d 610, 971 P.2d 986. The allegations with regard to Blossom Valley fail to state a claim for physical abuse as contemplated in section 15610.63 of the California Welfare and Institutions Code because Plaintiff does not allege that Blossom Valley committed assault, battery, prolonged deprivation of food or water, unreasonable physical restraint or sexual assault. However, the allegations with regard to Blossom Valley adequately allege neglect as contemplated by section 15610.57 of the California Welfare and Institutions Code because the Complaint alleges the negligent failure of Blossom Valley to exercise reasonable care with regard to its custody of Plaintiff, and that Blossom Valley acted with recklessness, malice, oppression and/or fraud.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint fails to allege facts that could support a claim against Blossom Valley for physical abuse under the Elder Abuse Act. The Court finds that the Complaint adequately alleges facts that could support a claim against Blossom Valley for neglect under the Elder Abuse Act. The motion to dismiss Plaintiff's claims against Blossom Valley for physical abuse is granted, and the motion to dismiss Plaintiff's claims against Blossom Valley for neglect is denied.

**V. Fraudulent and Negligent Misrepresentation**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Blossom Valley contends that Plaintiff's claim for fraudulent misrepresentation fails to "provide any facts of specificity as to how Defendant made a misrepresentation."*Mot. to Dismiss,* p. 17. Blossom Valley contends that although "Plaintiff's Complaint allege[s] a misrepresentation by Blossom Valley Inn, Plaintiff does not allege anywhere which of Blossom Valley Inns' employees, officers, directors, managing agents, or authorized representatives said or concealed that which was fraudulent to whom, when, why, how, and under what circumstances."*Id.* Blossom Valley contends that the Complaint lacks information "as to when, how, by what method and by whom, information was withheld from [Plaintiff and his family] or misinformation provided to them."*Mot. to Dismiss,* p. 18-19.

Plaintiff contends that he has alleged both fraudulent misrepresentation and negligent misrepresentation "with sufficient specificity to allow Defendant to understand fully the nature of the charge made against it."*Opp.,* p. 14, 16. Plaintiff contends that the facts in these causes of action, "read *not* in isolation, but in the context of the rest of the allegations contained in Plaintiff's complaint, answer the who, what, when and where" requirements.*Id.* at 14, 16, 82 Cal.Rptr.2d 610, 971 P.2d 986 (emphasis in original; internal quotations omitted).

**\*8** To state a claim for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) knowledge that the representation was false; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Agosta v. Astor,* 120 Cal.App.4th 596, 599, 603, 15 Cal.Rptr.3d 565 (Cal. Ct. Appeal 2004); 5 Witkin Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1121. To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a misrepresentation; (2) made without any reasonable ground for believing the representation was true; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 (9th Cir.2001);

5 Witkin Summary of Cal. Law (10th ed. 2005) Torts, § 818, p. 1181. Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."Fed.R.Civ.P. 9(b).Rule 9(b) requires that the claimant allege "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations."*Swartz v. KPMP LLP,* 476 F.3d 756, 764 (9th Cir.2006) (citing *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004).Rule 9(b) does not allow a complaint to merely "lump" multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."*Swartz,* 476 F.3d at 764-65.

The Complaint alleges that on or about January 10, 2007, Blossom Valley Inn entered into a written contract with Blossom Valley that contained the following terms: "Defendants represented and agreed that its facility was appropriate for patients with dementia. Defendants further agreed that plaintiff would be properly secured and maintained within a 24 hour facility and further agreed to provide and monitor plaintiff within a secure environment."*Compl.,* ¶ 44. In support of the causes of action for intentional misrepresentation and negligent misrepresentation, Plaintiff alleges that "[o]n or about January 10, 2007, and on several occasions since, Blossom and their agents, servants and employees and Does 51-100 stated to Plaintiff, and Plaintiff's family, among other things" the representations contained in the January 10, 2007 contract. *Id.* at ¶¶ 77, 89.Plaintiff alleges that these representations were false. *Id.* at ¶ 78.Plaintiff alleges that "Defendants" knew these representations were false, or had no reasonable reason to believe they were true. *Id.* at ¶¶ 79, 91.Plaintiff alleges that "Defendants" made the representations with the "intent to defraud or induce the Plaintiff to act."*Id.* Plaintiff alleges that he "acted in justifiable reliance upon the truth" of "Defendants' " representations. *Id.* Plaintiff alleges that he suffered damages as a result of Defendants' " misrepresentations. *Id.* at ¶¶ 85, 92.Although Plaintiff alleges the required elements for fraudulent misrepresentation or negligent misrepresentation, Plaintiff

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

fails to allege the specific identities of who made the alleged misrepresentations. Plaintiff relies on allegations that "Defendants" or Blossom Valley Inn made the alleged misrepresentations, which are insufficient under the heightened pleading standard articulated in Rule 9(b). Viewing the allegations in the light most favorable to Plaintiff, the Court finds that the Complaint fails to allege facts with the requisite particularity to support a claim for fraudulent misrepresentation and negligent misrepresentation. The motion to dismiss the causes of action for fraudulent misrepresentation and negligent misrepresentation is granted.

### *Conclusion*

**\*9** IT IS HEREBY ORDERED that the Motion to Dismiss (Doc. # 7) is **DENIED** as to the fifth cause of action for breach of written contract, the eighth cause of action for negligence, and the ninth cause of action against Blossom Valley Inn, Tina Toten and Nurse Doe # 1 for neglect under the Elder Abuse Act. The Motion to Dismiss is **GRANTED** as to the sixth cause of action for breach of implied covenant of good faith and fair dealing, the ninth cause of action against Blossom Valley Inn, Tina Toten and Nurse Doe # 1 for physical abuse under the Elder Abuse Act, the tenth cause of action for fraudulent misrepresentation, and the eleventh cause of action for negligent misrepresentation. These causes of action are **DISMISSED with leave to amend.** If Plaintiff wishes to amend the Complaint, he must file and serve a first amended complaint within sixty (60) days of the date of this order.

S.D.Cal.,2008.
Hougue v. City of Holtville
Slip Copy, 2008 WL 1925249 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1

2

## ATTACHMENT 2 TO MOTION TO DISMISS

3

4    Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.
E.D.Cal.,2007.

5    Only the Westlaw citation is currently available.
United States District Court,E.D. California.

6    EUGENE N. GORDON, INC., a California
Corporation, Jim Reego, and Liz Reego, as individuals,
Plaintiffs,

7
v.

8    LA-Z-BOY, INC., a Michigan Corporation, and Does
1-150, Defendants.

9    **No. 2:06-cv-2353-MCE-DAD.**

10

April 12, 2007.

11

12    Christian Jason Smith, Radoslovich Law Corporation,
Sacramento, CA, for Plaintiffs.

13    James D. McNairy, Kurt A. Kappes, Seyfarth Shaw LLP,
Sacramento, CA, for Defendants.

14

15    *MEMORANDUM AND ORDER*

16

MORRISON C. ENGLAND, JR., United States District
Judge.

17    **\*1** Through the present action, Plaintiffs Eugene N.
Gordon, Inc., Jim Reego, and Liz Reego allege Defendant

18    La-Z-Boy, Inc. ("Defendant") breached written contracts
between them; breached the implied covenant of good

19    faith and fair dealing; and committed intentional and
negligent misrepresentation. [FN1]

20

21          FN1. Because oral argument will not be of
material assistance, the Court orders this matter

22          submitted on the briefs. E.D. Cal. Local Rule
78-230(h).

23

24    More specifically, Plaintiffs allege that Defendant
permitted another retailer to use, *inter alia,* color schemes,

25

marketing materials, display environments, and product
lines ("Gallery Motif") in violation of the Parties' retailer
agreements ("Retailer Agreements"). In addition, Plaintiffs
aver that Defendant orally misrepresented that it would
protect Plaintiffs' right to exclusive use of the Gallery
Motif in a predetermined territory.

Now before this Court is Defendant's Motion to Dismiss
Plaintiffs' Complaint for failure to state a claim upon
which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the
reasons set forth below, Defendant's Motion to Dismiss is
granted in part and denied in part.

### BACKGROUND

Plaintiff Eugene N. Gordon, Inc. ("Gordon, Inc.") is a
retail operator of several "La-Z-Boy Galleries" in the
greater Sacramento area. Plaintiffs Jim Reego and Liz
Reego (collectively, the "Reegos") own and operate
Gordon, Inc. Defendant La-Z-Boy, Inc. is a Michigan
Corporation engaged in the business of manufacturing and
wholesaling home furnishings.

Beginning in 1992, Gordon, Inc. and Defendant entered
into a series of Retail Agreements that authorized Gordon,
Inc. to retail La-Z-Boy products through outlets generally
called "La-Z-Boy Galleries."

Pursuant to those Retail Agreements, Gordon, Inc.
proceeded to establish several outlets in the greater
Sacramento area over the next ten years. Each additional
retail outlet was memorialized by a substantially identical
Retail Agreement regarding the operation of those outlets.
Gordon, Inc.'s multiple retail locations operated without
material incident over the next ten years.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26

27

28

In 2004, Defendant authorized Plaintiffs to open another retail outlet in Rocklin, California. By July 2005, Plaintiffs learned that Defendant intended to permit a competing furniture store, RC Willey, to retail La-Z-Boy products through an outlet also located in Rocklin, California ("RC Willey Gallery"). In addition, Plaintiffs learned that RC Willey intended to advertise and sell its La-Z-Boy line through a "La-Z-Boy in store Gallery." Plaintiffs immediately alerted Defendant that they believed the use of the "in store" Gallery Motif would be a violation of the exclusive territory provisions contained in the Retail Agreements. Defendant responded that it would "ensure a fair playing field." Relying upon that assurance, the Reegos proceeded to expend substantial sums in anticipation of their planned Rocklin retail outlet ("Gordon Gallery").

Between July 2005, and June 2006, the Parties were in frequent communication regarding the anticipated opening of the Gordon Gallery and the RC Willey Gallery. Plaintiffs allege that during those communications, Defendant repeatedly stated that it would "ensure a level playing field." In June of 2006, however, Defendant informed Plaintiffs it would not meaningfully restrict the product lines and marketing materials available to RC Willey. On October 25, 2006, Plaintiffs filed the present action alleging breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation and seeking specific performance as well as declaratory relief.

## STANDARD

**\*2** On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir.1996). A complaint will not be dismissed for failure to state a claim " 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his or] her claim that would entitle [him or] her to relief.' " *Yamaguchi v. Dep't of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997).

If the Court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The Court should "freely give[ ]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of ... the amendment, [or] futility of the amendment...."Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir.1992).

## ANALYSIS

### 1. Choice of Law

Defendant first argues that Michigan law, rather than California law, applies to Plaintiffs' contractually related claims. In support of its contention, Defendant points to the following choice of law provision contained within each of the Retail Agreements: "Applicable Law. This Agreement, including all matters relating to the validity, construction, and enforcement thereof, shall be governed by the laws of the State of Michigan."Pl.'s Ex. 1 Part 5, 46 (Art. XI § 11.13). Plaintiffs do not dispute the existence or validity of the foregoing choice of law provisions.

Because this Court sits in the State of California it must analyze this choice of law issue in accord with California's choice of law rules. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir.2002). California courts will enforce a choice of law clause in a contract in favor of another jurisdiction's law if there is: 1) a substantial relationship between the contract and the chosen state or some other reasonable basis for the selection of the foreign states law; and 2) no conflict with fundamental policy of California law. *Nedlloyd Lines B.V.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1

2

3

*v.Super. Ct. of San Mateo,* 3 Cal.4th 459, 464-65, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992).

4

5

6

7

8

9

10

11

12

In the instant case, Defendant's state of incorporation, principal place of business and headquarters are all in Michigan. In addition, the contract terms themselves provide that Michigan law should govern the Retail Agreements. These connections plainly provide a reasonable basis for applying Michigan law to the present controversy. *AFB Capital Corp. V. Grove Props. Co.,* 126 Cal.App.4th 204, 217, 23 Cal.Rptr.3d 803 (2005). Further, neither Party has asserted nor can the Court discern any obvious conflict between Michigan law and fundamental policy of California law. Given the foregoing, the Court finds it proper to enforce the choice of law provisions contained in the Retail Agreements. Accordingly, Michigan law shall govern the resolution of the contractual issues herein.

13

**2. Breach of Contract**

14

15

16

17

18

19

**\*3** The gravamen of Plaintiffs' first claim is that Defendant is in breach of the Retail Agreements because it granted a competing company in Plaintiffs' exclusive territory the right to open a La-Z-Boy outlet when it permitted RC Willey to use the La-Z-Boy Gallery Motif. Pl.'s Ex. 1 Part 5, 28 (Art. II, § 2.3). Defendant rebuts that the Retail Agreements clearly reserve to it the right to wholesale products to other retailers without restriction. Pl.'s Ex. 1 Part 5, 28 (Art. II, § 2.3). In fact, the Retail Agreements provide as follows:

20

21

22

23

24

"La-Z-Boy shall not, while this Agreement remains in effect, own or operate, or grant the right to any third party to establish, any other Outlet within the Designated Area. Nothing in this Section 2.3 shall be deemed or construed in any manner, however, as limiting or restricting the right of La-Z-Boy to sell La-Z-Boy Products at wholesale to any furniture retailer doing business within the Designated Area so long as such retailer is not operating an Outlet therein."

25

26

27

28

*Id.*

Defendant contends there is no breach of the Retail Agreements as a matter of law because the foregoing provision has not been breached as RC Willey is not operating an "Outlet." In reply, Plaintiff points the Court to the definition of the term "Outlet" set forth in the Retail Agreements as follows:

" 'Outlet' shall mean, ... when used with respect to La-Z-Boy and other retailers, the retail outlets established by such persons which are La-Z-Boy Furniture Galleries."

Pl.'s Ex. 1 Part 5, 28 (Art. I, Definitions (I)). The Retail Agreements do not define the term "La-Z-Boy Furniture Galleries." Plaintiffs contend the RC Willey "in store La-Z-Boy Gallery" is, in essence, a La-Z-Boy Furniture Gallery despite the fact that it is within the walls of a larger establishment. Accordingly, Plaintiffs reason, Defendant has breached the Retail Agreements as it permitted RC Willey to operate an "Outlet" in its exclusive territory in violation of Article II, § 2.3.

Under Michigan law the primary goal in the construction or interpretation of a contract is to honor the intent of the parties. *Rasheed v. Chrysler Corp.,* 445 Mich. 109, 127 n. 28, 517 N.W.2d 19 (1994). When the language of the contract is clear and unambiguous the contract must be enforced as written. *HomeWausau Underwriters Inc. Co. v. Ajax Paving Indus. Inc.,* 256 Mich.App. 646, 650, 671 N.W.2d 539 (2003). However, a contract is ambiguous if the language is susceptible to two or more reasonable interpretations. *D'Avanzo v. Wise and Marsac, PC,* 223 Mich.App. 314, 319, 565 N.W.2d 915 (1997).

In an instance of contractual ambiguity, factual development is necessary to determine the intent of the parties and summary disposition is inappropriate.*Id.* Further, ambiguous terms are to be strictly construed against the drafter of the written contract .[FN2]*Sturgis Sav.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3

*& Loan Ass'n v. Italian Vill., Inc.,* 81 Mich.App. 577, 580, 265 N.W.2d 755 (1978).

> FN2. Plaintiffs' Complaint and Opposition contain parol evidence. However, when the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible. *See UAW GM Human Res. Ctr. v. KSL Recreation Corp.,* 228 Mich.App. 486, 502, 579 N.W.2d 411 (1998).

> The Retail Agreements at issue contain integration clauses and Plaintiffs have made no attempt to attack them. Pl.'s Ex. 1 Part 5, 46 (Art. XI, § 11.11). Accordingly, pursuant to Michigan law, the Court must confine its inquiry into the ambiguity of the Retail Agreements to the four corners of the documents.

Plaintiffs contend that they understood section 2.3's grant of exclusive territorial rights to include an exclusive right to use the "La-Z-Boy Furniture Galleries Program." Among the exclusive rights Plaintiffs believed they acquired pursuant to section 2.3, is the use of the Gallery Motif. In support of this understanding, Plaintiffs point to section 6.3 of the Retail Agreements, which provides that certain retail materials have been developed for "sole use by the La-Z-Boy Furniture Galleries." Pl.'s Ex. 1 Part 5, 33 (Art. VI § 6.3).

**\*4** Defendant contends that the only restriction section 2.3 imposes upon its ability to permit use of the Gallery Motif from the La-Z-Boy Galleries Program by other retailers in the territory is that those other retailers may not solely sell La-Z-Boy products.

Defendant relies upon section 7.5 to contend the contract permits Defendant to provide identical marketing materials, product lines, and other components of the La-Z-Boy Galleries Program to other retailers inside Plaintiffs' exclusive territory. Section 7.5 provides that the stand alone nature of the Galleries Program is essential to it and Plaintiffs must adhere thereto. Pl.'s Ex. 1 Part 5, 34 (Art. VII § 7.5).

Section 7.5 appears to be a limitation on Plaintiffs and not a description of the rights Plaintiffs acquired through section 2.3. Moreover, as discussed above "Outlet" is defined differently when referring to Plaintiffs as opposed to other retailers in the territory. Accordingly, section 7.5 does not definitively resolve the question of the extent and nature of the exclusive territorial rights acquired by Plaintiffs under section 2.3.

Having exhaustively reviewed the Retail Agreements, the Court finds that they are ambiguous as to the extent of the exclusive territorial rights granted to Plaintiffs. It is not clear from the face of the documents what materials were developed for sole use by Plaintiffs within their exclusive territory and what portions of the La-Z-Boy Galleries Program Defendant was free to give to other retailers in the area. Thus, factual development is necessary to determine the intent of the Parties and dismissal is inappropriate at this early stage in the litigation.

For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs' breach of contract claim for failure to state a claim is denied.

**3. Specific Performance**

Defendant next moves to dismiss Plaintiffs' separate claim for "specific performance" on the ground that specific performance is a remedy for breach of contract and not a stand-alone claim. Defendant is correct that specific performance is a remedy for the breach of contract where there is no adequate remedy at law. *Wilkison v. Wiederkehr,* 101 Cal.App.4th 822, 833, 124 Cal.Rptr.2d 631 (2002); *Petersen v. Hartell,* 40 Cal.3d 102, 110, 219 Cal.Rptr. 170, 707 P.2d 232 (1985). Accordingly, Plaintiffs' claim for specific performance is dismissed

1

2

3

without leave to amend. However, Plaintiffs may seek the equitable remedy of specific performance for their claims upon a proper showing.

4

5

**4. Declaratory Relief**

6

7

8

9

10

11

12

13

Defendant also moves to dismiss Plaintiffs' claim for "declaratory relief." Like Plaintiffs' claim for specific performance, this claim is also properly a prayer for relief and not a stand-alone claim. Plaintiffs cite no authority for the proposition that declaratory relief is a stand-alone cause of action as opposed to relief which the Court may give for breach of contract. Moreover, the declaration Plaintiffs seek is that their interpretation of the contract prevails. Thus, a separate claim for declaratory relief is duplicative of Plaintiffs' breach of contract claim because the Court must interpret the contract and resolve the underlying contractual dispute to determine if declaratory relief is appropriate.

14

15

16

*5 Accordingly, Plaintiffs separate claim for declaratory relief is dismissed without leave to amend. However, Plaintiffs may seek declaratory relief for their claims upon a proper showing.

17

**5. The Implied Covenant of Good Faith and Fair Dealing**

18

19

20

21

22

23

Defendant next moves to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing for failure to state a claim. Defendant contends that Michigan courts do not recognize a claim for breach of the implied covenant of good faith and fair dealing on the facts alleged by Plaintiffs. Plaintiffs contend that Michigan courts do, in fact, recognize an implied covenant of good faith and fair dealing and seek punitive damages for Defendant's allegedly willful breach of the covenant.

24

25

Defendant correctly contends that Michigan law only recognizes a claim for breach of the implied covenant

where the contract leaves the manner of one party's performance to that party's own discretion. *McLiechy v. Bristol West Ins. Co.,* 408 F.Supp.2d 516, 522 (W.D.Mich.2006); *Ferrell v. Vic Tanny Int'l Inc.,* 137 Mich.App. 238, 243, 357 N.W.2d 669 (1984).

Plaintiffs assert that Michigan law recognizes a claim for breach of the implied covenant where the contract is ambiguous. However, Plaintiffs were unable to locate any Michigan law to support this proposition. Instead, Plaintiffs rely upon a Fifth Circuit case applying Michigan law which extended the implied covenant to cases of ambiguity. *Hubbard Chevrolet Co. v. Gen. Motors Corp.,* 873 F.2d 873, 876-77 (5th Cir.1989).

However, the Court is not persuaded by *Hubbard Chevrolet* because Michigan courts have consistently and narrowly construed the implied covenant in an effort to preclude plaintiffs from pleading breach of contract in tort which would give rise to punitive damages. *See Kewin v. Massachusetts Mut. Life Ins. Co.,* 409 Mich. 401, 423, 295 N.W.2d 50 (1980). Under Michigan law a breach of contract cannot give rise to punitive damages even where the breach is intentional. *Ass'n Research & Dev. Corp. v. CNA Fin. Corp.,* 123 Mich.App. 162, 172, 333 N.W.2d 206 (1983). Accordingly, the Court finds that Michigan law only recognizes the implied covenant of good faith and fair dealing where the contract leaves the manner of one party's performance to that party's own discretion.

Plaintiffs' claim for breach of the implied covenant rests upon an assertion that Defendant "consciously, deliberately and unfairly" breached the contract by allowing RC Willey to use the Gallery Motif, a right held exclusively by Plaintiffs. Pl.'s Compl. ¶ 66. Defendant correctly contends that Plaintiffs' Complaint fails to allege any abuse of discretion by Defendant. As drafted, the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing under Michigan law.

26

27

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is granted with leave to amend. Further, Plaintiffs' request for punitive damages is dismissed without leave to amend.

**6. Intentional and Negligent Misrepresentation**

**\*6** Defendant next moves to dismiss Plaintiffs' claims for intentional and negligent misrepresentation for failure to plead with sufficient particularity. Fed.R.Civ.P. 9(b). Defendant argues Plaintiffs' Complaint fails to meet the requirements of Rule 9 because it does not set out the time, place, or to whom the statements were made. Plaintiffs respond that the Complaint sets forth both a date range as well as the parties which is sufficient to meet the pleading standards of Rule 9(b).

Rule 9(b) requires that all averments of fraud be plead with particularity, a standard which requires "a high degree of meticulousness." *Desaigoudar v. Meyercord,* 223 F.3d 1020, 1022 (9th Cir.2000). To meet this standard the allegations must identify the time, place, and content of the alleged misrepresentation. *Miscellaneous Serv. Workers, Drivers, & Helpers, Teamsters Local # 427 v. Philco-Ford Corp.,* 661 F.2d 776, 782 (9th Cir.1981). Additionally, Plaintiffs must plead facts explaining why the statement was false when it was made. *Smith v. Allstate Ins. Co.,* 160 F.Supp.2d 1150, 1152 (S.D.Cal.2001).

Defendant correctly points out that the Complaint does not state the specific content, recipient, times, or places of the allegedly fraudulent statements nor does it plead facts explaining why the statements were false at the time they were made. The Complaint merely notes that the statements allegedly conflict with the current state of affairs. Pl.'s Compl. ¶¶ 85-88. There are no facts alleged to support Plaintiffs' conclusion that the statements were false at the time they were made.

The Court finds that Plaintiffs' Complaint fails to meet the pleading standard of Rule 9(b) because it does not state with sufficient particularity the elements of a fraud claim. Accordingly, Defendant's Motion to Dismiss is granted with leave to amend.

**7. Dismissal of Plaintiffs Jim Reego and Liz Reego**

Lastly, Defendant moves to dismiss the Reegos', each in their individual capacity, from this case as the Complaint fails to allege a proper ground for relief as to them. Plaintiffs respond that the Reegos were personally injured as a result of the misrepresentations and breach of contract.

Defendant correctly points out that although the Reegos did sign the various Retail Agreements at issue, each of these Agreements was entered into by Gordon, Inc., not by the Reegos individually. Accordingly, they were not parties to the Retail Agreements and are, therefore, not proper Plaintiffs to assert claims for breach of contract or breach of the implied covenant of good faith and fair dealing. Plaintiffs concede that they are the sole shareholders of Gordon, Inc. and that the Corporation, rather than they themselves, are the real parties in interest as to these claims.

A shareholder cannot bring an individual cause of action unless it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder.

**\*7** *See Nelson v. Anderson,* 72 Cal.App.4th 111, 124, 84 Cal.Rptr.2d 753 (1999) (citations omitted). There is no argument that the Reegos acted on their own behalf when they invested in the property for the Gordon Gallery site. Rather, it is clear their investment was specifically in anticipation of Gordon, Inc. utilizing the property for the purpose of establishing a new retail outlet. To be sure, any injury resulting from the alleged breach of contract or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

breach of the implied covenant of good faith and fair dealing was an injury incidental to that of the Corporation. Because their injury does not stand independently of the Corporation as to the contractually related claims, the Reegos do not have standing to bring these claims individually. Accordingly, the Court grants Defendant's Motion to Dismiss the Reegos' contractually related claims without leave to amend.

As discussed above, Plaintiffs' claims for specific performance and declaratory relief have been dismissed because they are remedies as opposed to stand-alone claims. Given that these claims have been dismissed without leave to amend, Defendant's Motion to Dismiss the Reegos claims in their individual capacities as to these claims is proper and hereby granted without leave to amend.

The Parties dispute whether the misrepresentation claims are injuries personal to the Reegos or whether those injuries are those of the Corporation. The Court needn't resolve this dispute as the claims for misrepresentation have been dismissed for failure to plead with sufficient particularity. Consequently, the Court grants Defendant's Motion to Dismiss the Reegos in their individual capacities with leave to amend.

## CONCLUSION

For the reasons set forth above, La-Z-Boy Inc.'s Motion to Dismiss Gordon, Inc.'s Complaint is granted in part and denied in part. Defendant's Motion to Dismiss Plaintiffs' claim for breach of contract is denied. Defendant's Motion to Dismiss Plaintiffs' claims for "specific performance" and "declaratory relief" is granted without leave to amend. Defendant's Motion to Dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is granted with leave to amend. Defendant's Motion to Dismiss Plaintiffs' claims for intentional and negligent misrepresentation is granted with leave to amend. Lastly, Defendant's Motion to Dismiss Plaintiffs Jim Reego and Liz Reego from the Complaint is granted without leave to

amend as to Plaintiffs' breach of contract claim and breach of the implied covenant of good faith and fair dealing.

Defendant's Motion to Dismiss Plaintiffs Jim Reego and Liz Reego individually is granted with leave to amend as to Plaintiffs' misrepresentation claims. Plaintiffs have twenty (20) days from the issuance of this Order to amend their Complaint.

IT IS SO ORDERED.

E.D.Cal.,2007.
Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.
Slip Copy, 2007 WL 1101456 (E.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7