1   RICHARD E. WALDEN (SBN 108646); rwalden@bslaw.net
    LAURA G. BRYS (SBN 242100); laura@bslaw.net
2   BURRIS, SCHOENBERG & WALDEN, LLP
    12121 Wilshire Blvd., Suite 800
3   Los Angeles, California 90025
    tel (310) 442-5559 / fax (310) 442-0353
4   Counsel for Plaintiff, Co-Investor AG

5

6   SAMUEL D. LEVY (*pro hac vice*); samuel.levy@wg-law.com
    WUERSCH & GERING LLP
7   100 Wall Street 21st Floor
    New York, NY 10005
8   tel (212) 509-4713 / fax (212) 509-9559
    Counsel for Plaintiff, Co-Investor AG

9

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12

13   CO-INVESTOR  AG,                    )   Case No. C08-01812 (SBA)
                                         )
14                         Plaintiff,    )   Hon. Saundra B. Armstrong
                                         )
15      vs.                              )   PLAINTIFF'S MEMORANDUM
                                         )   OF POINTS AND AUTHORITIES IN
16   FONJAX, INC.,                       )   OPPOSITION    TO    DEFENDANT'S
                                         )   RULE 12(B)(6) MOTION TO DISMISS
17                                       )   THE COMPLAINT
                           Defendant.    )
18                                       )   [[*Proposed*] *Order concurrently filed*
                                         )   *herewith*]
19                                       )
                                         )   Hearing Date:  September 23, 2008
20                                       )   Time: 1:00 p.m.
                                         )   Ctrm. 3
21                                       )

22

23

24

25

26

27

28

3077.001

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

CONCISE STATEMENT OF FACTS ......................................................................... 2

      A.    The Parties ................................................................................. 2

      B.    The SPA ..................................................................................... 2

      C.    The Restated Certificate ........................................................... 2

      D.    Amending the Payment Dates of the Third Tranche ................. 3

      E.    Required Delivery of Stock Certificates ................................... 4

      F.    SPA Amendment ....................................................................... 5

      G.    Payment of the May Third Tranche Note ................................. 5

      H.    Co-Investor Learns that FonJax Considers Its Series A
            Preferred Stock to Have Been Converted to Common Shares .................. 6

STANDARD OF REVIEW ........................................................................................ 7

ARGUMENT ............................................................................................................. 9

CO-INVESTOR HAS ADEQUATELY
PLEADED A CAUSE OF ACTION FOR EACH OF
THE CLAIMS ASSERTED IN THE COMPLAINT ................................................. 9

    A.    Co-Investor Has Pleaded a Claim for Breach of Contract ................. 9

    B.    Co-Investor Has Stated a Claim for Breach of the
        Implied Covenant of God Faith and Fair Dealing .................. 13

    C.    Co-Investor Has Properly Pleaded a Fraud Count .................... 17

    D.    A Claim for Declaratory Judgment Has Been Stated ................ 21

    E.    Co-Investor Has Stated a Claim for Promissory Estoppel ......... 22

    F.    Co-Investor Has Stated a Claim for Unjust Enrichment ........... 23

CONCLUSION ....................................................................................................... 24

3077.001

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

# TABLE OF AUTHORITIES

**CASES**

Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d 941 (N.D. Cal. 2003) ............................................................................................................ 23

Allen v. State of Maryland, 171 Md. App. 544 (2006), aff'd 402 Md. 59 (2007) ...................... 17

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)........................................................ 7, 8

Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371 (2d Dist. 1990).......................................................................................................................... 9

Chevron U.S.A., Inc. v. El-Khoury, 285 F.3d 1159 (9th Cir. 2002)............................................ 15

Cline v. Yamaga, 97 Cal. App. 3d 239 (4th Dist. 1979) ............................................................ 15

Comunale v. Traders & General Ins. Co., 50 Cal. 2d 654 (1958) ............................................. 13

Congleton v. National Union Fire Ins. Co., 189 Cal. App. 3d 51 (2d Dist. 1987)........................ 14

Conley v. Gibson, 355 U.S. 41 (1957) ........................................................................................ 7

Diede Const., Inc. v. Monterey Mech. Co., 125 Cal. App. 4th 380 (1st Dist. 2004) ................... 22

Division of Labor Law Enforce. v. Transpacific Trans. Co., 69 Cal. App. 3d 268 (1st Dist. 1977) .......................................................................................................... 22

Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951 (1997) ........................................... 20

Erickson v. Pardus, 127 S. Ct. 2197 (2007) .......................................................................... 7, 8

F.D.I.C. v. Air Fl. Sys., Inc., 822 F.2d 833 (9th Cir. 1987), cert. denied, 485 U.S. 987 (1988) ...................................................................................................... 15

First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657 (6th Dist. 1992) ................................... 23

Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988)............................................................ 13

Fontana v. Haskin, 262 F.3d 871 (9th Cir. 2001) ....................................................................... 7

Ghirardo v. Antonioli, 14 Cal. 4th 39 (1996)............................................................................ 23

Golden v. Zwickler, 394 U.S. 103 (1969) ................................................................................. 21

Green v. Newmark, 136 Cal. App. 32 (1933) ........................................................................... 17

Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973) ................................................................. 13

Jacob & Youngs, Inc. v. Kent, 230 N.Y. 239 (1921) ................................................................. 15

Kray Cabling Co. v. County of Contra Costa, 39 Cal. App. 4th 1588 (1st Dist. 1995) ............................................................................................................ 17

Lauriedale Assocs., Ltd. v. Wilson, 7 Cal. App. 4th 1439 (1st Dist. 1992) ................................ 23

ii

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT

3077.001

Laza v. Superior Ct., 12 Cal. 4th 631 (1996) .................................................................. 20

Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723 (2d Dist. 2000) ................................. 23

Medico-Dental Bldg. Co. v. Horton & Converse, 21 Cal. 2d 411 (1942) ..................... 15

Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779 (2d Dist. 2003) .................. 23

Mundy v. Household Fin. Corp., 885 F.2d 542 (9th Cir. 1989) ..................................... 13

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) ............................................................. 8

North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578 (9th Cir. 1983) .................... 8

Reichert v. General Ins. Co., 68 Cal. 2d 822 (1968) ..................................................... 9

Sagana v. Tenorio, 384 F.3d 731 (9th Cir. 2004), cert. denied, 543 U.S. 1149
        7(2005) ............................................................................................................... 7

San Francisco Bay Area Rapid Transit Dist v. Spencer, No. C-04-04632, 2006 U.S.
        Dist. LEXIS 88022 (N.D. Cal. December 5, 2006) ........................................... 23

Schoolcraft v. Ross, 81 Cal. App. 3d 75 (5th Dist. 1978)............................................... 13

Sigma Dynamics, Inc. v. E. Piphany, Inc., No. C-04-569, 2004 U.S. Dist. LEXIS
        24261 (N.D. Cal. May 21, 2004) ....................................................................... 23

Stewart v. Ragland, 934 F.2d 1033 (9th Cir. 1991) ....................................................... 20

Superior Motels, Inc. v. Rinn Motor Hotels, Inc., 195 Cal. App. 3d 1032 (1st Dist.
        1987) ................................................................................................................... 15

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) .................................................... 8, 9

The First Interstate Bank of Idaho v. Small Business Admin., 868 F.2d 340 (9th
        Cir. 1989) ........................................................................................................... 14

Toscano v. Greene Music, 124 Cal. App. 4th 685 (4th Dist. 2004) ............................... 22

United Pub. Workers v. Mitchell, 330 U.S. 75 (1947) ................................................... 21

US Ecology, Inc. v. State of Calif., 129 Cal. App. 4th 887 (4th Dist. 2005)................. 22

Walker v. KFC Corp., 728 F.2d 1215 (9th Cir. 1984) .................................................... 22

Williams v. Boeing Co., 517 F.3d 1120 (9th Cir. 2008).................................................. 7

Youngman v. Nevada Irrig. Dist., 70 Cal. 2d 240 (1969) ............................................. 22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

**RULES**

Fed. R. Civ. P. 8(a)................................................................................ 7, 8, 9

Fed. R. Civ. P. 9(b)................................................................................ 8, 9

Fed. R. Civ. P. 12(b)(6)......................................................................... 1, 7, 8

Fed. R. Civ. P. 57.................................................................................. 21

**STATUTES AND CODES**

28 U.S.C. § 2201 (2008) ...................................................................... 21

Cal. Civ. Code § 1572(3) (2008) .......................................................... 19, 20

Cal. Civ. Code § 1710 (2008) .............................................................. 19, 20

**OTHER AUTHORITIES**

6A J. Moore, Federal Practice ¶ 57.08 [3] (2d ed. 1966) ..................... 21

Restatement (Second) Contracts §241 (1981) ...................................... 14

Restatement (First) of Restitution § 20 (1937) ..................................... 23

Webster's New Collegiate Dict. (1981), p. 800 ..................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    Plaintiff, Co-Investor AG ("Co-Investor") respectfully submits this Memorandum

2   of Points and Authorities in opposition to the June 2, 2008 Motion to Dismiss the Complaint by

3   Defendant, FonJax, Inc. ("FonJax") pursuant to Federal Rule of Civil Procedure 12(b)(6), which is

4   set for hearing on September 23, 2008 in the above-captioned court.

5                      **PRELIMINARY STATEMENT**

6

7        This lawsuit seeks to preserve the preferred shareholder position Co-Investor

8   enjoyed and paid for before FonJax's breach of the parties' contract, a multi-tranche November

9   30, 2006 Stock Purchase Agreement ("SPA"), under which Co-Investor invested approximately

10  $1.5 million for FonJax Series A Preferred Stock.

11       Co-Investor paid the principal and all interest due under the SPA, but FonJax has

12  misinterpreted and abused a preferred-to-common stock conversion mechanism under the SPA

13  after a delayed interest tranche payment, amounting to less than 1% of Co-Investor's investment in

14  FonJax.   After the interest payment, FonJax secretly concluded that Co-Investor's 1,996,595

15  shares of Series A Preferred Stock, some of which were acquired in an independent third-party

16  transaction, automatically converted into 19,966 nonassessable shares of common stock.

17       Co-Investor was neither notified of the alleged conversion when it occurred, nor

18  were any shares of common stock delivered to Co-Investor.   Not knowing anything to the

19  contrary, and believing its Series A Preferred Stock was intact, Co-Investor continued to make its

20  multi-tranche principle and interest payments under the remaining promissory notes.   The

21  payments were made in good faith and in the contractual belief of maintaining the Series A

22  Preferred Stock that was subject to the SPA.   But while Co-Investor continued its payments, the

23  financially struggling FonJax adopted the position that the payments for the Series A Preferred

24  stock Co-Investor believed it was acquiring were actually for FonJax common shares.   Co-

25  Investor did not learn of this scheme until after it made all required principle and interest

26  payments.

27       FonJax suffered no damage or prejudice from the timing of the Co-Investor interest

28  payment that FonJax wrongly asserts triggered the conversion to common shares.   In contrast, if

---

3077.001    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

the conversion took place, the loss suffered by Co-Investor is enormous: from majority preferred, to minority shareholder. At current market value, the 19,966 shares of FonJax common stock are worth about $20,000. Thus, according to FonJax, Co-Investor's investment of almost $1.5 million is lost as the result of a short delayed interest payment, converted to the benefit of FonJax, almost in its entirety.

## CONCISE STATEMENT OF FACTS

### A.    The Parties

Co-Investor is a Swiss independent private equity company, which supports companies looking to make capital investments. (See Complaint ¶ 4). FonJax is a Delaware company with its principal place of business in Walnut Creek, California. Id. at ¶ 6. FonJax provides services for the testing of mobile phone software and technology. Id. At the time of the investment, Co-Investor was to become the largest shareholder of FonJax. (See SPA, Complaint Ex. A).

### B.    The SPA

On November 30, 2006, Co-Investor and FonJax entered into the SPA. Id. The SPA provided that Co-Investor would purchase 1,485,147 shares of FonJax Series A Preferred Stock (the "Series A Preferred Stock") at a purchase price of approximately $1.5 million. Id. The investment was to be made in three tranches (i) $426,220 for 422,000 shares on or before November 30, 2006; (ii) $299,999.29 for 297,029 shares on or before February 28, 2007; and (iii) $773,779.18 for 766,118 shares on or before April 30, 2007. (See Complaint ¶ 7; SPA Article 2.3, Complaint Ex. A). These three tranche payments were in addition to another purchase of Series A Preferred Stock, $266,563 for 511,448 shares, which Co-Investor acquired from a third-party prior to taking part in the capital raise contemplated by the parties' contract. (See SPA Ex. A, Complaint Ex. A; Complaint ¶ 25).

### C.    The Restated Certificate

The rights, restrictions, privileges and preferences of the Series A Preferred Stock were set forth in the November 28, 2006 Second Amended and Restated Certificate of Incorporation of FonJax, incorporated into the SPA as an exhibit (the "Restated Certificate"). (See

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

Complaint, Ex. B). Article 7(a) of the Restated Certificate provides that the "Multiple Tranche Purchaser," defined in SPA Article 2.3 as Co-Investor, is required to *"provide evidence"* of having timely wired the funds for Co-Investor's purchase of the respective tranche allotment of Series A Preferred Stock. (Id.; see SPA Article 2.3, Complaint Ex. A). Article 7(a) also provides for conversion of the Series A Preferred Stock into common shares if Co-Investor *"fails ... to provide evidence ... of having wired the funds ... for the purchase of its allotment of shares of Series A Preferred Stock as set forth therein [the SPA]."* Id.

The reporting obligations under the Restated Certificate were subject to delays in funds being wired to meet a tranche payment; indeed, Co-Investor had previously informed FonJax that it had no control over how long wire transfers between its Swiss account and FonJax's U.S. account would take. (See Complaint ¶ 10). Thus, the obligation of Co-Investor under the Restated Certificate to *"provide evidence ... of having wired the funds to a bank account"* unambiguously reflected the parties' intent that Co-Investor meet the *"to purchase"* and *"to pay"* obligations under the SPA by executing the payments no later than the due date identified in the contract. Id.

The Restated Certificate further provided that FonJax was required to amend its Certificate of Incorporation in the event of a conversion of Co-Investor's Series A Preferred Stock to common shares. (See Restated Certificate Article IV.8, Complaint Ex. B). It is undisputed that no such amendment has occurred. (See Complaint ¶ 11).

**D.    Amending the Payment Dates of the Third Tranche**

After timely payment of the first two tranches, in late April 2007, Co-Investor informed FonJax that it desired to extend the time for funding the third tranche of the Series A financing, which payment was due by April 30, 2007. (Id. at ¶ 12; see SPA Article 2.3, Complaint Ex. A). FonJax agreed, and Co-Investor's third tranche was deferred pursuant to three promissory notes in the amount of $200,000, accruing interest at 9% per annum. (See Complaint ¶ 12; Complaint Ex. C). The maturity date for the first promissory note became May 31, 2007 (the "May Third Tranche Note"), and the remaining promissory notes matured respectively on June 30

3077.001

and July 31, 2007 (the "Remaining Third Tranche Notes"). (See Remaining Third Tranche Notes, Complaint Ex. C).

On April 27, 2007, the Restated Certificate was amended in a Certificate of Amendment to the Second Amended and Restated Certificate of Incorporation of FonJax, Inc. (the "Certificate of Amendment"). (See Certificate of Amendment, Complaint Ex. D). Importantly, Article 7(a) of the Certificate of Amendment continued to provide that Co-Investor was required to *"provide evidence"* of having wired funds to meet its Series A Preferred Stock purchase obligations under the SPA. If Co-Investor:

> *". . . fails to provide <u>evidence</u> to the Corporation <u>of having wired funds</u> . . . for the payment of the principal and accrued interest due on each of the Third Tranche Notes [the May Third Tranche Note and the Remaining Third Tranche Notes] (as defined in the Series A Agreement [the SPA]) . . . on their respective maturity dates, then all of the Multiple Tranche Purchaser's [Co-Investor's] shares of Series A Preferred Stock shall automatically and without further action on the part of such holder, be converted, effective as of the date one business day after the maturity date of any Third Tranche Note for which evidence of payment has not been so provided."*

(See Certificate of Amendment Article 7(a), Complaint Ex. D) (emphasis supplied).

Thus, as under the Restated Certificate, the Certificate of Amendment required only that Co-Investor provide *"evidence"* of having wired the tranche payments. Id.

**E.     Required Delivery of Stock Certificates**

Article 7(b) of the Certificate of Amendment required the Series A Preferred Stock holders to deliver the certificates of such converted shares. (See Certificate of Amendment Article 7(b), Complaint Ex. D). Article 7(b) also required FonJax to *"issue and deliver to such holder, at the place designated by such holder, a certificate or certificates for the number of full shares of the Common Stock to be issued and such holder shall be deemed to have become a stockholder of record of Common Stock."* Id. Despite now claiming that Co-Investor's Series A Preferred Stock was converted to common shares because of a late Co-Investor interest payment, no such delivery of common shares has ever been made by FonJax. (See Complaint ¶ 31).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

**F.**    <u>**SPA Amendment**</u>

As a result of the extended period negotiated for Co-Investor to make the Remaining Third Tranche Notes, the SPA was amended on April 30, 2007. (<u>See</u> Amendment to the Series A Preferred Stock Purchase Agreement, Complaint Ex. E (the "SPA Amendment")). Article 2.3 of the SPA was amended to reflect the revised payment dates of the tranche investments:

> "... the failure of the Multiple Tranche Purchaser [Co-Investor] to: (i) purchase the Second Tranche Shares on or before February 28, 2007, (ii) purchase the Third Tranche Shares on or before April 30, 2007, or (iii) pay the principal and accrued interest due on each of the Third Tranche Notes on their respective maturity dates (as defined in the Third Tranche Notes), shall result in the implementation of the special mandatory conversion set forth in Article IV, Section 7 of the Restated Certificate."

(<u>See</u> SPA Amendment Article 2.3, Complaint Ex. E).

Under this revision, Co-Investor continued to be required only "to purchase" the respective tranche shares and "pay" the principal and accrued interest "on the Third Tranche Notes on their respective maturity dates." <u>Id</u>.

**G.**    <u>**Payment of the May Third Tranche Note**</u>

The May Third Tranche Note provided that the principal and interest was "due and payable" on May 31, 2007 at 5:00 p.m. California time. (<u>See</u> May Third Tranche Note, Complaint Ex. C). Co-Investor timely initiated wire payment of the principle of the May Third Tranche Note on its maturity date, May 31, 2007. (<u>See</u> Complaint ¶ 17). In a June 1, 2007 e-mail, Co-Investor communicated to FonJax that the first note payment in the amount of $200,000 had been timely wired. <u>Id</u>.

After receipt of this e-mail, FonJax advised that Co-Investor did not include a $1,726 interest payment. <u>Id</u>. at ¶ 18. FonJax did not inform Co-Investor of its belief that the delayed interest payment caused an immediate conversion of Co-Investor's Series A Preferred Stock into FonJax common shares. <u>Id</u>. But even more important, FonJax did not dispatch written

3077.001

notice of such alleged conversion in accordance with Article 8.5 of the SPA, requesting the turnover of certificates for the FonJax Series A Preferred Stock required by Article 7 of the Certificate of Amendment.    (Id.; see SPA Article 8.5, Complaint Ex. A; Certificate of Amendment, Complaint Ex. D).  Instead, the financially struggling FonJax, hoping to extract the Remaining Third Tranche Notes payments from Co-Investor, remained silent even though it considered Co-Investor's Series A Preferred Stock to have been converted to common shares as of May 31, 2007 at 5:01 p.m.  (See Complaint ¶ 18).

Without objection, and at FonJax's demand, Co-Investor remitted, and FonJax accepted, the $1,726 interest payment on July 3, 2007.  Id. at ¶ 19.  Co-Investor made timely payments on the Remaining Third Tranche Notes because Co-Investor believed it was continuing to acquire Series A Preferred Stock.  Id. at ¶ 20.

**H.    Co-Investor Learns that FonJax Considers Its Series A Preferred Stock to Have Been Converted to Common Shares**

In early November 2007, after all Remaining Third Tranche Notes payments had been made, Co-Investor was informed by a member of FonJax's board that Co-Investor's Series A Preferred Stock was deemed by FonJax to have converted into common shares.  Id. at ¶ 21.  In early December 2007, FonJax's CEO forwarded a November 29, 2007 e-mail from FonJax's counsel explaining that FonJax considered all of Co-Investor's 1,996,595 Series A Preferred Stock automatically converted, effective as of June 1, 2007.  Id. at ¶ 22.  This was the first written communication from FonJax concerning the status of Co-Investor's Series A Preferred Stock.  Id.

After Co-Investor objected to the purported conversion, FonJax offered warrants for 1,996,595 shares of Series A Preferred Stock with an effective price per share of $1.01.  Id. Co-Investor rejected this offer.  Id. at ¶ 26.  FonJax also offered a Series A-1 Special Offering, which required Co-Investor to re-purchase its Series A position.  Id.  This offer also was refused. Id.

The conversion of FonJax's Series A Preferred Stock has not been reported by the Delaware Division of Corporations in compliance with Article 8 of the Restated Certificate (the

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

Certificate of Amendment did not amend Article 8 of the Restated Certificate).  (See Certificate of Incorporation, Complaint Ex. F).

### STANDARD OF REVIEW

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Specific facts are not required to be pleaded; instead the pleading need only "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004), cert. denied, 543 U.S. 1149 (2005).

In this case, Co-Investor has more than met this minimum pleading requirement.  The Complaint is replete with specific dates, events, and facts which detail each claim, including the underlying events which give rise to the parties' relationship and the creation of their contract.  (See Complaint, passim).  FonJax not only has "fair notice" of the claims and the grounds upon which they rest, but FonJax has been presented with detailed accounts of exchanges between the parties and the details of the specific contract terms between them which evidence the theories of recovery by Co-Investor.  Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001) (fair notice of claims asserted all that required under Rule 8(a)).  "Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."  Fontana v. Haskin, 262 F.3d at 877; see Williams v. Boeing Co., 517 F.3d 1120, 1131 (9th Cir. 2008).

FonJax's Rule 12(b)(6) motion triggers a superficial review of the Complaint, limited to testing whether Co-Investor stated a plausible claim without examining the evidence supporting those allegations.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (under Rule 8, "specific facts are not necessary; the statement need only 'give the defendant fair notice of what

7

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1  the . . . claim is and the grounds upon which it rests'" quoting Bell Atlantic Corp. v. Twombly,

2  127 S. Ct. at 1965.   The Ninth Circuit has recognized that a Rule 12(b)(6) motion tests only the

3  sufficiency of the plaintiff's statement of claim for relief without resolving the substantive merits

4  of the claim. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); North Star Int'l v. Arizona

5  Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983) (material allegations in the complaint, "even if

6  doubtful in fact," assumed to be true).

7

8         When considering a defendant's motion to dismiss, a court must accept as true all

9  of the factual allegations contained in the Complaint. Bell Atlantic Corp. v. Twombly, 127 S. Ct.

10 at 1965 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)); see also Erickson v.

11 Pardus, 127 S. Ct. at 2200.

12

13        The Bell Atlantic Court articulated a "plausibility" standard for pleading under

14 Rule 8(a)(2), pursuant to which "[f]actual allegations must be enough to raise a right to relief

15 above the speculative level, on the assumption that all the allegations in the complaint are true."

16 Id. at 1965. Later in the Bell Atlantic term, the Supreme Court reaffirmed that the plausibility

17 criterion did not impose the heightened Rule 8(a)(2) pleading standard that appears to be

18 suggested by FonJax (see FonJax Memorandum of Law ("MOL") pp. 3-4), holding in Erickson v.

19 Pardus, 127 S. Ct. at 2200, that "[s]pecific facts are not necessary" and that the Complaint "need

20 only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

21 (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1964).

22

23        Rule 8(a) "applies to all civil claims except those containing averments of "fraud or

24 mistake," which must be pleaded with particularity under Rule 9(b). Fed. R. Civ. P. 8, 9.  The

25 Supreme Court has narrowly construed Rule 9(b) to apply only to the types of actions enumerated

26 in the rule – those alleging fraud or mistake – and has not extended the heightened pleading

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1  standard to other legal theories.  See Sweirkiewicz v. Sorema N.A., 534 U.S. at 513 (declining to

2  apply Rule 9(b) to claims for § 1983 violations or employment discrimination claims).

3          Under this framework, Co-Investor has more than met its Rule 8(a)(2) and Rule

4  9(b) burdens, pleading specific and detailed facts which not only make the claims asserted

5  "plausible," but demonstrate that FonJax breached the SPA and committed fraud against Co-

6
   Investor.  The 'plausibility' of these and the other claims asserted in the Complaint is supported
7
   with detailed facts, including dates of events, the parties' exchanges and participants, and other
8
9  facts.  (See Complaint, *passim*).

10                              **ARGUMENT**

11                    **CO-INVESTOR HAS ADEQUATELY**
                  **PLEADED A CAUSE OF ACTION FOR EACH OF**
12                **THE CLAIMS ASSERTED IN THE COMPLAINT**

13  A.    **Co-Investor Has Pleaded a Claim for Breach of Contract**

14          Under California law, which applies to this dispute (see SPA Article 8.2, Complaint
15
   Ex. A), to sustain a breach of contract claim, a party must demonstrate (i) contract formation; (ii)
16
   plaintiff's performance; (iii) breach by defendant; and (iv) damages.  See Careau & Co. v. Security
17
18  Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388, (2d Dist. 1990) (citing Reichert v. General

19  Ins. Co., 68 Cal. 2d 822, 830 (1968)).

20          FonJax asserts that Co-Investor cannot state a breach of contract claim because Co-
21
   Investor did not timely make the May Third Tranche Note interest payment.  (See FonJax's MOL
22
   pp. 4-5).  But FonJax misconstrues Co-Investor's breach of contract claim: the inquiry is not
23
24  whether Co-Investor timely made the May Third Tranche Note interest payment, but whether

25  FonJax has breached the SPA by converting the Series A Preferred Stock without complying with

26  the SPA and Restated Certificate / Certificate of Amendment.

27          Examining Complaint ¶¶ 31-34, Co-Investor alleges that FonJax breached the SPA

28  by improperly converting the Series A Preferred Stock into common shares without notice to Co-

                                          9
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1   Investor.  (See Complaint ¶¶ 31-34).  Article 7(a) of the Certificate of Amendment required Co-

2   Investor to *"provide evidence"* of having wired funds to meet its Series A Preferred Stock

3   purchase requirements under the SPA.  (See Certificate of Amendment Article 7(a), Complaint Ex.

4   D).  Co-Investor met this obligation by timely providing evidence that it remitted payment under

5   the May Third Tranche Note.  (See Complaint ¶ 17).  That is all that was required under the

6   conversion mechanism of Certificate of Amendment Article 7.  (See Certificate of Amendment

7
8   Article 7(a), Complaint Ex. D).

9          Article 7(b) of the Certificate of Amendment required FonJax to *"issue and deliver*

10  *to such holder, at the place designated by such holder, a certificate or certificates for the number*

11  *of full shares of the Common Stock to be issued and such holder shall be deemed to have become a*

12  *stockholder of record of Common Stock."*  (See Certificate of Amendment Article 7(b), Complaint

13
14  Ex. D).  No such delivery of common shares has ever been made by FonJax.  (See Complaint ¶

15  31).  As Co-Investor provided "evidence" of payment of the May Third Tranche Note, and no

16  common shares have been delivered to Co-Investor, no conversion was triggered or could have

17  occurred, thus rendering FonJax in breach of the SPA for converting Co-Investor's Series A

18  Preferred Stock.

19         In addition, Article IV.8 of the Restated Certificate (which was not amended by the

20  Certificate of Amendment) requires FonJax to amend its Certificate of Incorporation in the event

21
22  of a conversion and cancellation of preferred shares.  (See Restated Certificate Article 8,

23  Complaint Ex. B).  As of the date of the alleged conversion, and even now, FonJax has not

24  amended its Delaware charter to reflect the alleged conversion of Co-Investor's Series A Preferred

25  Stock to common shares.  (See Complaint ¶ 24).  By taking action to convert the Series A

26  Preferred Stock in contravention of the Restated Certificate, and without having amended its

27
28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1   Certificate of Incorporation, no conversion is recognized under FonJax's Delaware charter, and no

2   conversion could have contractually taken place. Id.

3          Fonjax's focus on the timing of the interest payment on the May Third Tranche

4   Note is a diversion when considering the breach of contract claim as alleged in the Complaint.

5   (See Complaint ¶¶ 27-35).  Co-Investor performed under the SPA by making all of the SPA

6   Article 2.3 tranche payments in their entirety, with interest.  (See SPA Article 2.3, Complaint Ex.

7   A; Complaint ¶¶ 20, 30).  Whether the May Third Tranche Note interest payment was late is of no

8

9   moment to whether the SPA and the Restated Certificate / Certificate of Amendment were

10  breached by FonJax converting Co-Investor's Series A Preferred Stock, which is alleged in the

11  Complaint.

12         In order for the conversion to have actually taken place, and in order for it to

13  become effective, FonJax's charter is required to have been amended, and the common shares

14

15  issued. Neither event has taken place.  Absent compliance with the conversion requirements in the

16  SPA and the Restated Certificate / Certificate of Amendment, which is implicated by the SPA, no

17  conversion could have taken place, and the conversion that FonJax alleges to have occurred

18  therefore violates the parties' contract.

19         FonJax also misunderstands the allegations in Complaint ¶ 34.  (See FonJax MOL

20  p. 7).  Under the SPA, Co-Investor's initial tranche purchase was for 422,000 shares, and under

21

22  SPA Article 2.3, FonJax was to acquire 297,029 shares as part of the Second Tranche, and

23  766,118 shares as part of the Third Tranche.  (See SPA Article 2.3, Complaint Ex. A; SPA

24  Amendment, Complaint Ex. E).  The total 1,485,147 Second Tranche and Third Tranche shares

25  were contemplated under the SPA; the other 511,448 shares were acquired by Co-Investor from a

26  third-party pursuant to an outstanding convertible promissory note. (See Complaint ¶ 25; SPA Ex.

27  A, Complaint Ex. A).

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    FonJax's claim that the separate 511,448 shares were subject to the SPA because

2    they are identified in Ex. A of the SPA (see FonJax MOL p. 7) is wrong because these shares are

3    neither identified in, nor contemplated as a tranche in either the SPA; Amended SPA; Restated

4    Certificate; or Certificate of Amendment, nor any other applicable instrument governing the

5    parties' rights and obligations with regard to the alleged conversion of Co-Investor's Series A

6    Preferred Stock.  (See SPA, Restated Certificate, Certificate of Amendment, SPA Amendment,

7

8    Complaint Exs. A, B, D, E, respectively).

9    Just because Article 7(a) of the Certificate of Amendment refers to "all" shares,

10   does not mean the 511,448 shares acquired by Co-Investor from a third-party are therein

11   contemplated.  Certificate of Amendment Article 7(a) refers to the "Multiple Tranche Purchaser,"

12   which reverts to the definition in SPA Article 2.3 (see Certificate of Amendment Article 7(a),

13   Complaint Ex. D), defined as Co-Investor.   (See SPA Article 2.3, Complaint Ex. A).  And "Co-

14   Investor" in Article 2.3 is defined as the entity required to make the Second Tranche and Third

15

16   Tranche closings, not the party which already had acquired the subject 511,448 shares from the

17   third-party.  Id.  There is no place in the SPA or Certificate of Amendment which concludes that

18   the shares already acquired by Co-Investor were subject to the tranche purchase requirements of

19   the SPA; to the contrary, these shares were not subject to the SPA or Certificate of Amendment,

20   and therefore were immune to any alleged conversion.[1]  Thus, to the extent the Series A Preferred

21   Stock was converted by the timing of the May Third Tranche Note interest payment, only the

22   shares contemplated by the May Third Tranche Note were subject to conversion, not the 511,448

23   shares acquired by Co-Investor from a third-party.

24

25

26   _____

27   [1] The SPA was amended on April 30, 2007, and Article 2.3 continued to provide only that
Co-Investor was required "to purchase" the Tranche Shares and pay the principal and accrued
interest "on the Third Tranche Notes on their respective maturity dates."  Thus, no reference to the

28   shares not contemplated by the tranche payments is indicated.  (See SPA Article 2.3, Complaint
Ex. A).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    Further, Certificate of Amendment Article 7(a) refers to conversion of *"each of the*

2  *Third Tranche Notes"* upon payment default.  (See Certificate of Amendment, Complaint Ex. D).

3  To the extent any conversion is deemed to have occurred – and Co-Investor maintains that no

4  conversion took place at all – such conversion could only pertain to the May Third Tranche Note

5  payment, as all other Remaining Third Tranche Notes were timely paid on their principle and

6  interest maturity dates.  (See Complaint ¶ 20).  At most, therefore, conversion could only have

7  occurred on the Series A Preferred Stock incident to the May Third Tranche Note, which was for

8  $199,999.19 + interest, roughly one-third of the 766,118 Series A Preferred Stock conferred by the

9  Remaining Third Tranche Notes.  (See Remaining Third Tranche Notes, Complaint Ex. C).  Thus,

10 only 255,372 Series A Preferred Stock could possibly have been subject to conversion – the

11 balance of the original 1,485,147 (SPA Article 2.3) + 511,517 (third-party acquisition) Series A

12

13 Preferred Stock, 1,741,292 shares, were not subject to conversion.

14

15    Since FonJax breached the SPA by improperly converting the Series A Preferred

16 Stock, and otherwise improperly converting the number of shares that were not subject to any

17 default under the May Third Tranche Note, Co-Investor has stated a claim for breach of contract.

18 **B.    Co-Investor Has Stated a Claim for Breach of the**
       **<u>Implied Covenant of Good Faith and Fair Dealing</u>**
19

20    California implies a covenant of good faith and fair dealing in all contracts.  <u>Mundy</u>

21 <u>v. Household Fin. Corp.</u>, 885 F.2d 542, 544 (9th Cir. 1989).  There is a requirement "that

22 'neither party will do anything which will injure the right of the other to receive the benefits of the

23 agreement.'"  <u>Gruenberg v. Aetna Ins. Co.</u>, 9 Cal. 3d 566, 573 (1973), quoting <u>Comunale v.</u>

24 <u>Traders & General Ins. Co.</u>, 50 Cal. 2d 654, 658 (1958).  The "implied covenant imposes upon

25 each party the obligation to do everything that the contract presupposes they will do to accomplish

26

27 its purpose."  <u>Schoolcraft v. Ross</u>, 81 Cal. App. 3d 75, 80 (5th Dist. 1978).  The object of the rule,

28 of course, is to make effective the parties' promises under an agreement.  <u>Foley v. Interactive Data</u>

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1   Corp., 47 Cal. 3d 654, 683 (1988). In such a context, failing to give effect to the purpose and

2   intent of the parties' expectations and promises implies unfair dealing by one party to the

3   agreement. Congleton v. National Union Fire Ins. Co., 189 Cal. App. 3d 51, 59 (2d Dist. 1987).

4
5          In this case, when Co-Investor timely paid the May Third Tranche Note, FonJax

6   accepted the payment without the interest component knowing that it considered Co-Investor to

7   have forfeited its Series A Preferred Stock, which FonJax knew was the purpose of the Remaining

8   Third Tranche Note payments. (See Complaint ¶¶ 20, 21, 38-40). In bad faith, and certainly not

9   in the interest of fair dealing, FonJax adopted at 5:01 p.m. on May 31, 2007, when the May Third

10  Tranche Note was due, the position that because Co-Investor had not remitted the interest

11  payment, all Series A Preferred Stock held or to be held by Co-Investor had automatically

12  converted into common shares. Id. But FonJax did not notify Co-Investor that the Series A

13  Preferred Stock that Co-Investor continued to pay for had converted to common shares, which

14
15  were substantially worthless relative to the Series A Preferred Stock. Id. at ¶ 18.

16         The fact is, Co-Investor made all of its Remaining Third Tranche Note payments

17  under the SPA and the Certificate of Amendment, and the delay until July 3, 2007 of payment of

18  less than 1% of the Remaining Third Tranche Payments was not a material breach of the SPA.

19  See Restatement (Second) Contracts §241 (1981) (five factors for breach to be material: (i) extent

20  to which injured party deprived of benefit reasonably expected; (ii) extent to which injured party

21  can be adequately compensated for the part of benefit deprived; (iii) extent to which party failing

22  to perform will suffer forfeiture; (iv) likelihood that party failing to perform will cure; and (v)

23
24  extent to which behavior of party failing to perform comports with standards of good faith and fair

25  dealing); The First Interstate Bank of Idaho v. Small Business Admin., 868 F.2d 340 (9th Cir.

26  1989) (adopting Restatement test of materiality).

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1         A material breach is one that "is so dominant or pervasive as in any real or

2    substantial measure to frustrate the purpose of the undertaking." <u>Medico-Dental Bldg. Co. v.</u>

3    <u>Horton & Converse</u>, 21 Cal. 2d 411 (1942).  In this case, the short period of time, which elapsed

4    from the date the May Third Note interest payment was due, May 31, 2007 (<u>see</u> May Third

5    Tranche Note, Complaint Ex. C), to the date of payment, July 3, 2007 (<u>see</u> Complaint ¶ 19), is not

6    material relative to the entire transaction between the parties.  <u>Chevron U.S.A., Inc. v. El-Khoury</u>,

7    285 F.3d 1159, 1162 (9th Cir. 2002) (jury question whether failure to pay sales tax was material

8    breach of franchise agreement).  The question of whether the delayed Co-Investor interest

9    payment was a material breach, thus warranting the automatic conversion of the Certificate of

10   Amendment, is a jury question.  <u>F.D.I.C. v. Air Fl. Sys., Inc.</u>, 822 F.2d 833, 840 (9th Cir. 1987),

11   <u>cert. denied</u>, 485 U.S. 987 (1988).  In fact, under California law, "what constitutes substantial

12   compliance or performance is a question of fact." <u>Cline v. Yamaga</u>, 97 Cal. App. 3d 239, 248 (4th

13   Dist. 1979).  And since the question of whether the late interest payment "is so dominant or

14   pervasive as in any real or substantial measure to frustrate the purpose of the contract" requires

15   discovery, dismissal at this stage is not warranted.  <u>Superior Motels, Inc. v. Rinn Motor Hotels</u>,

16   Inc., 195 Cal. App. 3d 1032, 1051 (1st Dist. 1987) (<u>quoting</u>, <u>Jacob & Youngs, Inc. v. Kent</u>, 230

17   N.Y. 239, 243-44 (1921)).

18        Moreover, Co-Investor's claim that an automatic conversion occurred also is belied

19   by the SPA.  In order for the conversion to take place, Article 2.3 of the SPA states

20       . . . *the failure of the Multiple Tranche Purchaser [Co-Investor] to purchase the*
     *Second Tranche Shares on or before February 28, 2007 and the Third Tranche*
     *Shares on or before April 30, 2007 shall result in the implementation of the special*
     *mandatory conversion set forth in Article IV, Section of the Restated Certificate.*

21   (<u>See</u> SPA Article 2.3, Complaint Ex. A) (emphasis supplied)[2]

---

[2]  SPA Article 2.3 was amended by the SPA Amendment in April 2007 when the
Remaining Third Tranche Notes were negotiated.  (<u>See</u> SPA Amendment, Complaint Ex. E).  The

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    Co-Investor made the February 28, 2007 Second Tranche purchase (see FonJax

2    MOL p. 10); it is only the May Third Tranche Note that is in dispute with regard to the delayed

3    interest payment. (See Complaint ¶ 39). SPA Article 2.3 requires that in order for the Restated

4    Certificate Article IV, Section 7 automatic conversion to have occurred (later reverting to the

5    conversion conditions in the Certificate of Amendment), Co-Investor must have defaulted on

6    making the Second Tranche purchase and the Third Tranche purchase. Id. SPA Article 2.3,

7    Complaint Ex. A). The automatic conversion under the Certificate of Amendment Article IV,

8    Section 7,[3] upon which FonJax relies for the conversion of Co-Investor's Series A Preferred

9    Stock, is triggered, if at all, by Co-Investor defaulting on the Second Tranche and Third Tranche

10   payments. Id. Because no such multiple default occurred, the Article IV, Section 7 Certificate of

11   Amendment automatic conversion could not have taken place, and any such conversion by FonJax

12   was made in bad faith.

13       This construction of SPA Article 2.3 is not a hypertechnical interpretation to avoid

14   

15   the pitfall of a contractual lapse, but a fair and natural reading of the SPA. The use of the

16   

17   

18   conversion mechanism in SPA Amendment Article 2.3 was subject to FonJax having *"fulfilled the
     Closing conditions set forth in [SPA] Section 5.11."* Id. SPA Article 5.11 reverts to the original

19   SPA Article 3 closing conditions. (See SPA Article 5.11, Complaint Ex. A). Based upon the SPA
     Article 5.11 *"subsequent sale"* of the Remaining Third Tranche Notes language (id.), the closing

20   conditions of SPA Article 5.1 are implicated (id.), which revert to the original closing conditions
     of SPA Article 3. Id. at Articles 5.11, 5.2. The closing condition of SPA Article 3.3(b), requiring

21   that Series A Preferred Stock was not issued or outstanding at the time of the acquisition, was not
     met at the time of SPA Amendment 2.3 because Series A Preferred Stock had already been issued

22   to Co-Investor pursuant to the First, Second, and Third Tranches. (See SPA Amendment Article
     2.3, Complaint Ex. E; SPA Article 2.3, Complaint Ex. A). Indeed, Co-Investor admits in its MOL

23   that the Series A Preferred Stock had already been acquired by Co-Investor. (See FonJax MOL
     pp. 10-12). The SPA Amendment Article 2.3 requirement of *"Closing conditions set forth in

24   Section 5.1"* were not satisfied in order to trigger the conversion mechanism under Certificate of
     Amendment Article IV, Section 7. (See SPA Amendment Article 2.3, Complaint Ex. E; SPA

25   Article 2.3, Complaint Ex. A). Thus, even if a conversion event occurred under the May Third
     Tranche Note, the requirements of SPA Article 2.3, not SPA Amendment Article 2.3, are

26   implicated. Id.

27   

28   [3] The Restated Certificate was amended by the Certificate of Amendment at the time the
     Remaining Tranche Payments were negotiated and agreed to by FonJax. (See Complaint ¶ 13).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1  conjunction *"and"* in SPA Article 2.3 means both the Second Tranche <u>and</u> Third Tranche

2  payment defaults were required, not either of them in isolation. <u>See</u> <u>Green v. Newmark</u>, 136 Cal.

3  App. 32, 36 (1933) (conjunction "and" connects contract clauses); <u>Allen v. State of Maryland</u>, 171

4  Md. App. 544, 555 (2006) (use of "and" in statutory construction requires taking into account

5  occurrence of events separated by conjunction), <u>aff'd</u> 402 Md. 59 (2007). The ordinary, familiar

6  meaning of the conjunction "or," if used in SPA Article 2.3 (as opposed to SPA Amendment

7
8  Article 2.3; see fn. 2), would have delineated a choice or alternatives, such as a payment default of

9  the Second Tranche <u>or</u> the Third Tranche. <u>Kray Cabling Co. v. County of Contra Costa</u>, 39 Cal.

10  App. 4th 1588, 1593 (1st Dist. 1995) (discerning meaning of "or" vs. "and" in common

11
12  construction, citing Webster's New Collegiate Dict. (1981), p. 800). FonJax elected the term,

13  *"and"* when articulating the automatic conversion trigger events in the SPA, and similarly elected

14  to use the closing conditions prerequisite in SPA Amendment Article 2.3, and cannot now argue

15  that the late interest payment of the May Third Tranche Note triggered, without a default of the

16  Second Tranche payment, an automatic conversion under the Certificate of Amendment.

17          Given that the triggering events for the automatic conversion did not occur under

18  SPA Article 2.3, no conversion took place under the Certificate of Amendment Article IV, Section

19
20  7. Thus, to the extent FonJax converted the Series A Preferred Stock to common shares was the

21  result of a bad faith construction of the SPA, used by FonJax to cause a surrender of Co-Investor's

22  preferred equity position in FonJax.

23  **C.    <u>Co-Investor Has Properly Pleaded a Fraud Count</u>**

24          FonJax misunderstands the nature of the fraud count pleaded by Co-Investor. After

25  FonJax concluded that Co-Investor's Series A Preferred Stock, for which Co-Investor paid nearly

26  $1.5 million, was converted to common shares on May 31, 2007 at 5:01 p.m., when the May Third

27  Tranche Note interest payment was not tendered, FonJax neither notified Co-Investor nor took any

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

steps to disclose its interpretation of the SPA Amendment conversion trigger.  (See Complaint ¶¶ 18, 20, 21, 46, 49).  The reason is that Co-Investor still had two additional Remaining Third Tranche Note payments due, worth in excess of $400,000 to the struggling FonJax.  There can be no doubt that FonJax knew Co-Investor would never have paid the Remaining Third Tranche Notes if Co-Investor was informed the payments, putatively made for the Series A Preferred Stock, were for common shares.  Indeed, the value of the common shares is almost worthless, but FonJax wanted to be paid, so it duped Co-Investor into making the Remaining Third Tranche Note payments by remaining silent as to its SPA conversion interpretation.

As detailed in Point B above, there was no conversion because Co-Investor made the February 28, 2007 Second Tranche purchase (id. at ¶ 20; FonJax MOL p. 10), thereby failing to cause the Certificate of Amendment Article IV, Section 7 automatic conversion which was triggered by a SPA Article 2.3 default of the Second Tranche and Third Tranche payments.  (See SPA Article 2.3, Complaint Ex. A).  The automatic conversion under the Certificate of Amendment Article IV, Section 7 never occurred, so the defense to the fraud claim raised by FonJax at MOL pp. 10-11 is not relevant to whether FonJax remained silent while Co-Investor continued to invest in a struggling company that had no intention of rewarding the investment with the Series A Preferred Stock.  Id.

That FonJax attempted to extract more payments from Co-Investor when it knew Co-Investor understood such tranche payments were for Series A Preferred Stock is an act of fraud; indeed, why would Co-Investor have continued making the remaining tranche payments if it was investing in nearly worthless common shares of a company to which it could exercise no control?  Sure, FonJax maintains in its MOL pp. 11-12 that Co-Investor was obligated to pay the Remaining Tranche Notes, but that obligation was based upon Co-Investor accumulating Series A Preferred Stock.  At 5:01 p.m. on May 31, 2007, when FonJax concluded the entire lot of Co-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    Investor's Series A Preferred Stock converted to common shares, the fraud took its roots.

2    FonJax's silence while Co-Investor continued to make the Remaining Third Tranche Notes

3    payments was an act of fraud or material omission.  Such fraud is even more evident when

4    considering that after the putative conversion, FonJax offered to sell back to Co-Investor its Series

5    A Preferred Stock position for essentially a double payment.  (See Complaint ¶¶ 23, 26).

6

7         FonJax's curious argument that no fraud could have occurred because Co-Investor

8    already acquired the Series A Preferred Stock when the Third Tranche closed in April 2007 is not

9    relevant to whether FonJax defrauded Co-Investor.  There is no dispute FonJax continued to

10   accept Remaining Third Tranche Note payments from Co-Investor, indeed, demanded the May

11   Third Tranche Note interest payment after the time FonJax considered the Series A Preferred

12   Stock to have been converted to common shares.  (Id. at ¶18).  Whether the Series A Preferred

13   Stock had been acquired by that time has no bearing on FonJax's conduct in demanding payment

14   of the Remaining Third Tranche Notes even though FonJax considered the investment to have

15   been for common shares.

16

17         FonJax's argument that Co-Investor was obligated to make the Remaining Third

18   Tranche Notes payments even if the Series A Preferred Stock had converted misses the point of

19   Co-Investor's fraud count.  The fraud lies not in assessing any contract obligation of Co-Investor,

20   but in the intention and conduct of FonJax unilaterally and secretly converting the Series A

21   Preferred Stock, and then demanding Co-Investor continue to make the payments for the Series A

22   Preferred Stock subject to the Remaining Third Tranche Notes.  See Cal. Civ. Code § 1710 (2008)

23   ("3.  The suppression of a fact, by one who is bound to disclose it, or who gives information of

24   other facts which are likely to mislead for want of communication of that fact").

25         In fact, California's Civil Code specifically addresses such a situation:

26

27         § 1572.  Actual fraud defined

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1

> *Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:*
> *1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;*
> *2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;*
> *3. The suppression of that which is true, by one having knowledge or belief of the fact;*
> *4. A promise made without any intention of performing it; or,*
> *5. Any other act fitted to deceive.*

2

3

4

5

6

7

8   (See Cal. Civ. Code § 1572 (2008)).

9           In this case, there can be no doubt that FonJax suppressed its understanding that the

10  Co-Investor Series A Preferred Stock had been converted to common shares, omitting such

11  disclosure because FonJax knew Co-Investor would not tender further payments under the

12  Remaining Third Tranche Notes.  This is exactly the type of fraud defined under Calif. Civil Code

13  § 1572(3).

14

15          The Complaint asserts that FonJax suppressed its belief that after the delay in Co-

16  Investor remitting the May Third Tranche Note payment, the Series A Preferred Stock had

17  converted to common shares.  (See Complaint ¶¶ 18, 20-22,46-49).  Such a secretly held position

18  meets the California Civil Code definition of fraud in a contract situation.  Cal. Civ. Code §

19  1572(3) (2008); Cal. Civ. Code § 1710 (2008).  That no such conversion occurred is not relevant

20  to whether FonJax committed an act of fraud; a party's intent to deceive its contract party is the

21  test of fraud.  Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997); Laza v.

22

23  Superior Ct., 12 Cal. 4th 631, 638 (1996) (fraud requires intent to deceive or intent to induce

24  reliance, justifiable reliance, and damages).  Because actual fraud is a question of fact implicating

25  a party's intent, it is typically left to a jury determination.  Stewart v. Ragland, 934 F.2d 1033 (9th

26  Cir. 1991).

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1    In this case, dismissal of Co-Investor's fraud count is not warranted because the

2    claim should be open to discovery to learn the extent to which FonJax fraudulently induced the

3    Remaining Third Tranche Notes payments, while sitting silent as Co-Investor paid $1.5 million for

4    near worthless common shares.

5    **D.    A Claim for Declaratory Judgment Has Been Stated**

6    The Declaratory Judgment Act provides at 28 U.S.C. § 2201 (2008), that "upon the

7    filing of an appropriate pleading, may declare the rights and other legal relations of any interested

8    party seeking such declaration, whether or not further relief is or could be sought." FonJax asserts

9    that the relief sought by Co-Investor is the same as alleged in Co-Investor's breach of contract

10    action. (See FonJax MOL p. 13). What FonJax overlooks, however, is that Co-Investor has made

11    all principle and interest payments under the Remaining Third Tranche Notes. (See Complaint ¶

12    20). The only issue to be decided is whether such payments were for the Series A Preferred Stock,

13    or the common shares, as claimed by FonJax. That is exactly the type of contract rights and

14    obligations dispute subject to the Declaratory Judgment Act.

15    Moreover, the Declaratory Judgment Act provides that the Court may declare the

16    parties' rights "whether or not further relief is or could be sought." 28 U.S.C. § 2201 (2008). The

17    availability of declaratory relief depends on whether there is a live dispute between parties to a

18    contract. Golden v. Zwickler, 394 U.S. 103 (1969). A request for declaratory relief may be

19    considered independent of whether other forms of relief are available. See United Pub. Workers v.

20    Mitchell, 330 U.S. 75, 93 (1947); 6A J. Moore, Federal Practice ¶ 57.08 [3] (2d ed. 1966).

21    In this case, even if other relief may be available, the Court is authorized under the

22    Declaratory Judgment Act and Fed. R. Civ. P. 57 to render a declaration as to Co-Investor's rights

23    under the SPA and SPA Amendment. Id.

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001

1     **E.**    <u>**Co-Investor Has Stated a Claim for Promissory Estoppel**</u>

2            Under California law, promissory estoppel requires a promise, reliance, and injury.

3 <u>Division of Labor Law Enforce. v. Transpacific Trans. Co.</u>, 69 Cal. App. 3d 268, 275 (1st Dist.

4 1977). It is a doctrine relying on equitable principles to satisfy the requirement of consideration in

5 exchange for a promise. <u>US Ecology, Inc. v. State of Calif.</u>, 129 Cal. App. 4th 887, 901-902 (4th

6 Dist. 2005); <u>Toscano v. Greene Music</u>, 124 Cal. App. 4th 685, 692 (4th Dist. 2004). Promissory

7

8 estoppel may be invoked where a "promise which the promisor should reasonably expect to induce

9 action or forbearance of a definite and substantial character on the part of the promisee and which

10 does induce such action or forbearance is binding if injustice can be avoided only by enforcement

11 of the promise." <u>Diede Const., Inc. v. Monterey Mech. Co.</u>, 125 Cal. App. 4th 380, 385 (1st Dist.

12 2004). In California,

13

14       *"the only reliance which can make the promisor's failure to perform actionable is*
      *the promisee's doing what was requested. If that reliance was detrimental, it*

15       *would constitute consideration. If it was not detrimental, it would not constitute*
      *consideration; and since detrimental reliance is an essential feature of promissory*

16       *estoppel, that doctrine could not be invoked to make the promisor liable. In other*
      *words, where the promisee's reliance was bargained for, the law of consideration*

17       *applies; and it is only where the reliance was unbargained for that there is room*
      *for application of the doctrine of promissory estoppel."*

18 <u>Youngman v. Nevada Irrig. Dist.</u>, 70 Cal. 2d 240, 249-50 (1969); see <u>Walker v. KFC Corp.</u>, 728

19 <u>F.2d 1215, 1219-20 (9th Cir. 1984)</u>.

20            Here, FonJax promised through the SPA that it intended to honor the acquisition by

21

22 Co-Investor of the Series A Preferred Stock. Co-Investor relied upon such representations by

23 continuing to make the Remaining Third Tranche Notes payments. (<u>See</u> Complaint ¶ 20). Even if

24 FonJax did not breach the SPA by making the subject conversion, under principles of equity, Co-

25 Investor is entitled to relief under the doctrine of promissory estoppel.

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

**F.    Co-Investor Has Stated a Claim for Unjust Enrichment**

A claim for unjust enrichment requires pleading "the receipt of a benefit and the unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2d Dist. 2000); see Sigma Dynamics, Inc. v. E. Piphany, Inc., No. C-04-569, 2004 U.S. Dist. LEXIS 24261, at *1, *15 (N.D. Cal. May 21, 2004). "The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2d Dist. 2003) (quoting Lauriedale Assocs., Ltd. v. Wilson, 7 Cal. App. 4th 1439, 1448 (1st Dist. 1992)). A party may claim unjust enrichment if restitution is available when other remedies are inadequate. Ghirardo v. Antonioli, 14 Cal. 4th 39, 50 (1996).

A party is required to make restitution if the party is unjustly enriched at the expense of another. Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d 941, 958 (N.D. Cal. 2003); First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657, 1662 (6th Dist. 1992). "Benefit" means any advantage, id., and in this case, advantage is clearly to FonJax because it unilaterally converted the Series A Preferred Stock to the detriment of Co-Investor. "A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess." Restatement (First) of Restitution § 20 (1937) cited with authority in, San Francisco Bay Area Rapid Transit Dist v. Spencer, No. C-04-04632, 2006 U.S. Dist. LEXIS 88022, at *53 (N.D. Cal. December 5, 2006). "A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced ... by the fraud of the payee." Id. at § 28.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT

3077.001

1    Co-Investor clearly meets the requirement of a party which has paid money to a

2 promisor, yet has received, based upon at most a technical default of a delayed interest payment

3 that has caused no prejudice to FonJax, common shares that are nearly worthless. This is exactly

4 the type of situation in which the claim of unjust enrichment exists to remedy.

5

6                                  **CONCLUSION**

7        For the reasons set forth above, FonJax's Rule 12(b)(6) motion should be

8 dismissed.

9

10                                        WUERSCH & GERING LLP

11                        By:

12                               Samuel D. Levy (admitted *pro hac vice*)
                                 Co-Counsel for Plaintiff CO-INVESTOR AG
13                               100 Wall Street, 21st Floor
                                 New York, New York 10005
14                               (212) 509-4713

15                               Laura G. Brys
                                 Co-Counsel for Plaintiff CO-INVESTOR AG
16                               Burris, Schoenberg & Walden, LLP
                                 12121 Wilshire Blvd., Suite 800
17                               Los Angeles, California 90025
                                 (310) 442-5559
18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS THE
COMPLAINT

3077.001